# Mulhern et al., Appellants, *v.* Lehigh Valley Coal Co.
## O'Boyle et al., Appellants, *v.* Lehigh Valley Coal Co.

*Negligence—Mining—Fellow servants—Engineer and miner—Act 1885.*

A mining company is not liable for an injury to a miner caused by a mis-hoist of an engineer in the employ of the company, where there is no evidence that the company had any knowledge that the engineer was an incompetent person, and there is no positive evidence that the engineer was incompetent, under the act of June 30, 1885, P. L. 219.

Argued April 13, 1894.   Appeals, Nos. 261 and 262, Jan. T., 1894, by plaintiffs, Anne Mulhern et al., and Ann O'Boyle et al., from judgments of C. P. Schuylkill Co., Nov. T., 1890, Nos. 67 and 68, on verdicts for defendant.   Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Affirmed.

Trespass for death of plaintiffs' husbands.   Before GREEN, J.

At the trial it appeared that plaintiffs' husbands, Charles Mulhern and John O'Boyle, each between forty and fifty years of age, were miners in the employ of defendant company.   On Aug. 2, 1890, they quit work and came out of the tunnel in the mine at the bottom of the shaft about half past one o'clock in the morning to be hoisted to the surface.   They took their places in the cage, which after a short delay started up the shaft at a rapid rate.   Shortly after the cage started, O'Boyle's body fell down the shaft, and Mulhern's body was subsequently found in the timbers on the side of the shaft.

It appeared that when O'Boyle and Mulhern gave the signal to start, the engineer, John Miller, made a mis-hoist by pulling the reverse lever east instead of west; the result of this was to leave the north cage, which was at the bottom of the shaft, and in which O'Boyle and Mulhern were passengers, standing unmoved, while the south cage, which was at the top of the shaft, was raised towards the drum.   The engineer soon discovered his mistake, and reversed his engine.   The result of this was to lower the south cage to the mouth of the shaft, at which point the north cage began to move up.   There was no evidence whatever to show how the men were killed, or what was the exact connection between the mis-hoist and the accident.

It was claimed by plaintiffs that Miller, the engineer, was an incompetent person, and that he had made a similar mis-hoist some months before. There was no evidence to show that the company had been notified of the previous mis-hoist. Miller was formerly a fireman, and when an engineer left he applied for the place. The division superintendent and outside foreman " put Miller on trial," restricting his duties as engineer to the night time, when no coal was being hoisted.

The charge of the court was as follows:

" One question in this case is whether there is sufficient proof as to the cause of the accident. There is no doubt that the accident was in some way connected with the mis-hoist of the engineer ; but whether the mis-hoist of the engineer really was the cause of the accident or not is a different question. We have no proof, nothing but mere theory, on the part of either the defendant or the plaintiff, as to how these men came to lose their lives. If we are to be guided simply by theory (and that is all we have in this case) and not by facts showing how these men came to lose their lives, then one theory presented is that these men were shaken off of the cage by a sudden jerk ; the other theory is that the cage had come to a stop, and that these men stepped off from the cage on to the timber. If they got off in that way, without being shaken off, that would raise the question whether, even if there had been an act of negligence on the part of the engineer, getting off of the cage (where they probably would have been perfectly safe had they remained, nothing about the cage having been broken or injured at all) was not an act of contributory negligence on their part. Is there sufficient proof to show that it was the negligence of the engineer that caused these men to lose their lives ? Of course, the mis-hoist was somehow or other connected with the killing of these men, because both happened about the same time, but whether it was the cause of the killing or not rests, not upon the evidence in the case, but upon the theories that may be started in regard to the manner in which these men came to lose their lives.

" This case assimilates itself very much to a case which we have not been able to lay our hands on, but of which we have a very distinct recollection—an accident that occurred at Port Clinton—a case tried in this county, where a man lost his life

in some way attempting to get on the cars : Case of Phila. & R. R. R. v. Schertle, 97 Pa. 450. It was alleged it was by reason of some defect in the step of the car. There was no other cause assignable for it. There was no positive proof how he came to lose his life ; yet the jury were allowed to infer that it must have been by reason of the bad step in getting upon the car, and they found a verdict in favor of the plaintiff. The case went up to the Supreme Court, and that court, in reversing the lower court, said that there was not sufficient proof as to how the man came to suffer the injury, that there was no presumption that the man lost his life in the manner alleged, that it was a mere theory, and there was no positive proof with regard to it. We think the present case very closely resembles that in the defective proof here as to how these men really came to lose their lives. It is based upon mere theory.

" If you adopt the theory that the men jumped from the cage, that the cage had stopped, that they stepped off the cage on to the timbers, and then were thrown off by the subsequent movement of the cage, even if that were the case, it would raise a question of contributory negligence, and that would be a mere theory upon which there is no evidence here. For that reason, it seems to us very questionable whether the court would be justified in submitting the question to the jury, whether there is sufficient proof here that it was the negligence of the engineer and his mis-hoist that caused this loss of life.

" However, the main ground upon which we base our action is on the general principle of the common law, that where one employee meets with an accident or an injury, by reason of the negligence of his co-employee (and there it stands upon a footing different from where it is an outside party that meets with an accident) the employer is not responsible for the injury arising from the negligence of the co-employee, unless there is proof that the principal who employed him knew that he was employing an incompetent person, or that he, after he had employed him, had received notice, in some way or other, that the party who was employed to do the work was incompetent, and, having knowledge of that fact, still continued him in his employment. Under such circumstances an employer would be held responsible for the negligent act of his employee, even though a co-employee should be the one who had suffered the injury.

" But in this case there is an absolute want of proof so far as that is concerned. As we understand it, there is no evidence here of any knowledge on the part of the employer, or on the part of this company, represented by its superintendent, Colonel Brown, that this man was an incompetent person to take charge of this work,—no notice to them by anybody at all of his incompetency. On the contrary, according to his own evidence, and the testimony of others, this man had come to him with the highest recommendations as to character for sobriety, and as to being a careful, painstaking and industrious man. Even though there may have been a previous occasion when there was a mis-hoist, there is no proof here at all (on the contrary the proof is the reverse) that the company were in any wise notified of the accident at that time. So that there is no proof that the company had knowledge in any way, either by notice from others, or personal notice on the part of the superintendent, that this man was an incompetent man for this work. That being the principle of the common law, we think that under the common law there could be no recovery.

" The question then would be whether the mine law passed in 1885 has changed the common law in that respect. The mine law in one of its sections requires that a person employed at an engine shall be a sober and competent person. Then comes the question whether this company employed him as a sober and competent person, or whether they had knowledge that he was not sober and competent. The uncontradicted proof in this case is that they had no knowledge other than that he was both sober and competent.

" Under the mine law the question might be raised whether it depends upon the company's knowledge that he was sober and competent or not. We do not think that the mine law of 1885 has changed the common law in that respect; that all that is required of them is that they shall employ a person whom they believe to be sober and competent, unless knowledge or notice is brought home to them of the fact of his incompetency.

" That view of the mine law of 1885 is strengthened in our opinion by the peculiar clause which follows, and is made a subsequent part of the same law, which prescribes that the employer, or the owner, or the operator, shall be liable for any

willful failure to comply with the provisions of the mine law. A willful failure to comply with the provisions of the mine law, to our mind, must mean that there must have been some knowledge that they were violating it, some knowledge which should have induced them not to do what they did do, must have been some knowledge of the fact, for instance, in this case, that Miller was incompetent, that he was not the kind of man who should have been put in such a place. Otherwise the word 'willful' in a clause of that kind in the law would not have any very special meaning.

" Our impression is, therefore, that, so far as the act of 1885 is concerned, it does not alter the rule of the common law as to the liability of employers for injury done by one co-employee to another. For these reasons, and under the undisputed facts in the case, and the testimony of all the witnesses, we do not see how there can be a recovery on the part of the plaintiffs, and therefore [we feel constrained to direct a verdict in favor of the defendant.] " [1]

Verdict and judgment for defendant. Plaintiffs appealed.

*Error assigned* was instruction, quoting it.

*F. W. Bechtel*, for appellants, cited : Gates v. R. R., 154 Pa. 572 ; R. R. v. Werner, 89 Pa. 59 ; Schall v. Cole, 107 Pa. 1 ; Baker v. Boro., 151 Pa. 234 ; Pa. Canal Co. v. Bentley, 66 Pa. 30 ; R. R. v. Rowan, 66 Pa. 393 ; Act of June 30, 1885, rules 18, 19, 20, 39, P. L. 205 ; Ross v. Walker, 139 Pa. 42 ; R. R. v. Moore, 29 Kansas, 452 ; R. R. v. Baugh, 149 U. S. 368.

*S. H. Kaercher*, for appellee, cited : Melchert v. Brewing Co., 140 Pa. 448 ; Coal Co. v. Jones, 86 Pa. 432 ; Bridge Co. v. Newberry, 96 Pa. 246 ; Sykes v. Packer, 99 Pa. 465 ; R. R. v. Schertle, 97 Pa. 450 ; Simpson v. Locomotive Works, 139 Pa. 245 ; Moules v. Canal Co., 141 Pa. 632 ; Ford v. Anderson, 139 Pa. 263 ; Whitman v. R. R., 156 Pa. 175 ; Smith v. R. R., 158 Pa. 82 ; Ely v. R. R., 158 Pa. 236 ; Reiser v. Penna. Co., 152 Pa. 40 ; Tube Works v. Bedell, 96 Pa. 175 ; Waddell v. Simoson, 112 Pa. 573 ; Greenway v. Conroy, 160 Pa. 190 ; R. R. v. Bell, 112 Pa. 400 ; Kinney v. Corbin, 132 Pa. 341 ; Ross v. Walker, 139 Pa. 49 ; Act of June 30, 1885, rule 22,

P. L. 238 ; Baker v. R. R., 95 Pa. 211 ; Reese v. Biddle, 112 Pa. 72 ; Lineoski v. Coal Co., 157 Pa. 169 ; Coke Co. v. Roby, 115 Pa. 364 ; Haley v. Keim, 151 Pa. 117 ; Lebbering v. Struthers, Wells & Co., 157 Pa. 323 ; Bradbury v. Coal Co., 157 Pa. 231.

## MULHERN v. COAL COMPANY.

PER CURIAM, April 23, 1894 :

We have listened with interest to the earnest argument of the appellant's counsel, but we are not persuaded that there was proof of negligence on the part of the company sufficient to go to the jury.

The competency of the engineer who made the hoist at the time of the accident was the controlling question. Next came the question whether if he was incompetent the company had knowledge of such incompetency. Upon these questions we concur in opinion with the learned judge of the court below, and affirm the judgment for the reasons he has so well stated.

The judgment is affirmed.

## O'BOYLE v. COAL COMPANY.

PER CURIAM, April 23, 1894 :

We affirm the judgment in this case upon the reasons given by the learned judge of the court below at the trial. It is identical in all its legal aspects with Mulhern v. The Lehigh Valley Coal Company just decided, grows out of the same unfortunate accident, and rests on the same facts. Employers are not insurers. The burden of showing negligence in cases like that before us is on the plaintiff, and without such proof of the incompetency of the engineer, and of the knowledge of his incompetency by the company defendant as would support a verdict, the case of the plaintiff was not made out.

The judgment is affirmed.