WALKOWSKI *v.* PENOKEE & GOGEBIC CONSOLIDATED
MINES.

| 115 | 629 |
| s73NW | 895 |
| 133 | 5177 |
| 115 | 629 |
| 147 | 655 |

| 115 | 629 |
| e156 | 5271 |
| j156 | 5275 |
| j156 | 5276 |
| j156 | 9277 |
| 156 | 5286 |

1. MASTER AND SERVANT—PRESUMPTION OF COMPETENCY—INFANT
EMPLOYÉS.

The law raises no presumption that a boy 17 years of age is
too young to manage properly a brake by which is controlled
the hoisting and lowering of passenger cages in a mine.

2. SAME—SELECTION OF EMPLOYÉS — NEGLIGENCE — QUESTION FOR
COURT.

Whether an employer exercised due care to ascertain the
qualifications of a servant at the time of hiring him is for
the court to determine, where the testimony as to what took
place at such time is undisputed.

3. SAME—DUE CARE—WHAT CONSTITUTES.

Due care in the selection of employés is "such care as, in
view of the consequences that may result from negligence on
the part of employés, is fairly commensurate with the perils
or dangers likely to be encountered."

4. SAME.

Due care on the part of a mining company in employing a
boy 17 years old to manage a brake by which the hoisting and
lowering of passenger cages in the mine was controlled is
shown by the facts that the machinery was simple and easily
managed, and that the master mechanic, before employing the
boy, made inquiries of the boy's father, who was a practical
engineer, and was informed that the boy had had two years'
experience in managing the brake at another mine, where the
duties of the brakeman were more difficult, and that he was
capable of doing the work which the company required.

5. SAME—NOTICE OF INCOMPETENCY.

When a master has exercised due care in the employment of a
servant, he may rely upon the presumption of competency
until he has notice or knowledge to the contrary.[1]

---

[1] With this case, as reported in 41 L. R. A. 33, is an exhaustive note
upon the subject of knowledge as an element of an employer's
liability to an injured servant.

6. SAME.

An employé may frequently use . machinery in a negligent manner, but if such negligent use leaves no trace behind it, which it is the duty of the master upon inspection to see, no presumption of knowledge on the part of the master arises.

7. SAME.

The fact that an employé, after operating machinery correctly for several months, forgot on one occasion, and turned a brake the wrong way, thereby causing injury to a fellow-servant, has no tendency to show incompetency.

8. SAME—GENERAL REPUTATION—EVIDENCE.

Evidence that the fellow-servants of an employé, in the retention of whom the master is alleged to have been negligent, had talked among themselves that he did his work improperly, is not admissible to prove general reputation for incompetency.

9. SAME—IRRELEVANT INQUIRY.

Evidence that the person in charge of the brake by which was controlled the hoisting and lowering of the passenger cages in a mine was in the habit of lowering the cages at too great speed is not admissible upon the question of his incompetency in an action for injuries caused by his turning the brake the wrong way and letting the cage fall.

Error to Gogebic; Haire, J. Submitted January 4, 1898. Decided January 25, 1898.

Case by Martin Walkowski against the Penokee & Gogebic Consolidated Mines for personal injuries. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Affirmed.

The miners in defendant's employ were lowered into and raised out of the mine in iron cages about 12 feet square. These cages were attached to wire cables running over drums in the engine house, situated about 500 feet from the shaft, which was between 500 and 700 feet deep. The operation was as follows: If a cage is to be lowered, and its weight be insufficient to overcome the weight of the other cage, a gear (called a "friction gear") inside the drum is thrown into place, and the engine is started, and, by hoisting up the lower cage, the

upper one is lowered. If, however, the weight of the upper cage is sufficient to overcome that of the lower, so as to descend of its own volition, it is handled by a hand brake. This is a wheel set on a perpendicular screw, which tightens or loosens a band running around the drum. By loosening this band, the drum will revolve if the weight of the descending cage is sufficient. This band is controlled by a screw, and can be loosened or tightened at the will of the man controlling it.

In 1892, and about seven months before the accident, defendant employed one William Ryan as brakeman, whose duty it was, by use of the brake, to lower the cage in one shaft. On October 18th of that year, the cage was descending in the usual manner, with Ryan managing the brake. He turned the screw in the wrong direction, releasing the pressure. As a result, the cage fell to the bottom, and plaintiff, as well as others, was seriously injured. Plaintiff brought suit to recover for his injuries, planting his right of action upon three grounds of negligence:

(1) That Ryan was incompetent at the time of hiring, and that defendant, in hiring him, did not use ordinary care to ascertain his qualifications.

(2) That Ryan was incompetent at the time of the accident, and that defendant had actual notice of such incompetency.

(3) That defendant had not used reasonable care in ascertaining how Ryan was doing his work.

At the conclusion of the evidence, the court directed a verdict for the defendant. The further essential facts will be stated in connection with the points raised.

*Button & Norris*, for appellant.

*Charles E. Miller*, for appellee.

GRANT, C. J. (*after stating the facts*). 1. Ryan was 17 years and 5 months old at the date of his employment. It is urged that it is negligence to employ one so young in such a responsible position, or, at least, that it is

a question for the jury to determine. Young Ryan had
had an experience of nearly 2 years in a similar position
at another mine, where he had performed his work satis-
factorily.   He had performed his work satisfactorily, and
without accident, for between 7 and 8 months at the de-
fendant's mine.   It is conceded that he had sufficient
physical ability, and was possessed of ordinary intelli-
gence.   Plaintiff's own testimony shows that he had the
"appearance of being older than he was." Plaintiff cites
no authorities to sustain his contention.   The work was
not difficult.   There is nothing to show that it would be
safer to employ for this work a person who was older.
The fact that he had done his work safely and satisfac-
torily for over 7 months is the best proof of his com-
petency.   There is no presumption of law that one 17 or
18 years of age cannot do such work as safely and as well
as one older.   There is no authority or reason in the
proposition that one of that age is an improper person to
employ for such work.   The authorities appear to be uni-
form against the proposition.   *Sutherland* v. *Railroad
Co.*, 125 N. Y. 737; *Kansas, etc., Coal Co.* v. *Brownlie*,
60 Ark. 582; *Neal* v. *Gillett*, 23 Conn. 437; *Molaske* v.
*Coal Co.*, 86 Wis. 220.   In *Sutherland* v. *Railroad Co.*,
the telegraph operator, through whose negligence the acci-
dent happened, was a little over 17 years old, had had
over a year's experience, been in the employ of the com-
pany 3 months prior to the accident, and had discharged
his duties intelligently and to the entire satisfaction of the
company.   It was held that the jury could not be per-
mitted to infer that the operator was "incompetent from
his age only, or that the company was negligent in em-
ploying him, or to speculate whether, if the operator had
been a man of mature years or judgment, he would have
been less likely to have committed the mistake which
Johnson did."   In *Molaske* v. *Coal Co.* it was held neg-
ligence to employ a boy 12 years old in a responsible posi-
tion, requiring constant watchfulness and attention.   The
court appears to have placed its holding upon the presump-

tion of the common law, which fixes the age when the presumption of capacity arises at 14.

2. Did the company exercise due care in employing Ryan? One Richard Pascoe, the master mechanic of the defendant, was the authorized agent to employ him. Ryan's father had been a practical engineer, known to Mr. Pascoe for 18 years. Mr. Pascoe was informed by the father of the experience the son had had, and was advised that he was capable of doing the work. Mr. Pascoe was familiar with the method of braking at the Michigamme mine, where young Ryan had had his experience, which was the same as in the defendant's mine. It further appears that the duties of the hand brakeman at the defendant's mine were more simple than at the mine at Michigamme. One McCall, an engineer, and witness for the plaintiff, testified that, "if a man had had a year's experience, he ought to be a very good man," and "I should consider two years' experience would make any one all right." One John St. Cyr, another witness for the plaintiff, testified on cross-examination: "I should think that if Mr. John Ryan recommended a man, that he would be all right." These facts were undisputed. It therefore became a question of law for the court to determine whether the defendant had exercised due care in the employment of Ryan. The degree of care required is well stated in *Wabash R. Co.* v. *McDaniels*, 107 U. S. 454: "It is such care as, in view of the consequences that may result from negligence on the part of employés, is fairly commensurate with the perils or dangers likely to be encountered." In this case the machinery used was simple and easily managed. Defendant made due inquiries, of one competent to judge, as to Ryan's experience and ability. The defendant therefore exercised due care in employing him.

3. There was no evidence that Ryan had become incompetent, or, if there were, that knowledge of his incompetency had been brought home to the defendant. When the master has exercised due care in the employment of a

servant, he may rely upon the presumption of competency until he has notice or knowledge to the contrary. 1 Bailey, Mast. & Serv. § 1413; *Chapman* v. *Railway Co.*, 55 N. Y. 579. The only evidence plaintiff offered from which he claimed the right to go to the jury upon the question of notice was the testimony of one O'Donnell, who was at the time the engineer of the hoisting machinery for the defendant. He testified that he thought Ryan sometimes lowered the cage too fast. He also testified that they disagreed in regard to the speed at which men should be lowered; that he did not know who knew the most about running the brake, Ryan or himself; that Ryan "had always attended to his business up to this time" (the time of the accident). The officers of the mine were frequently in the engine room, frequently rode up and down in the cages, had seen Ryan perform the work, and had never seen or had their attention called to any act of incompetency or fault otherwise than, as above stated, that one person thought that he ran too fast. An employé may frequently use machinery in a negligent manner, but if such negligent use leaves no trace behind it, which it is the duty of the master upon inspection to see, no presumption of knowledge on the part of the master arises. A switchman may for a long time frequently leave a switch open, and habitually violate the rules of the master; but no inference of knowledge on the part of or notice to the master will arise from that fact. *Cameron* v. *Railroad Co.*, 145 N. Y. 400; *Lee* v. *Railroad Co.*, 87 Mich. 574.

4. It is admitted that Ryan and plaintiff were fellow-servants, and that the defendant is not liable for the negligent act of a competent fellow-servant. It was therefore incumbent upon plaintiff to show that the accident happened in consequence of such incompetency. Ryan had used this screw successfully and properly for more than seven months, and had performed a like service in another mine for nearly two years. For some reason he forgot, and turned the screw the wrong way. It is not

different from the case where a competent switchman forgets and leaves the switch open.   In neither case is the accident due to incompetency, but to a single negligent act of a competent employé.   *Harvey* v. *Railroad Co.*, 88 N. Y. 481; 1 Bailey, Mast. & Serv. § 1474; *McNally* v. *Colwell*, 91 Mich. 527; *Thompson* v. *Railway Co.*, 84 Mich. 281.

5. Plaintiff sought to show talk among the men that Ryan lowered the cage too fast.   This was ruled out.   It had no tendency to prove general reputation for incompetency. *Davis* v. *Railroad Co.*, 20 Mich. 105; 1 Bailey, Mast. & Serv. § 1501.   Not only is there no evidence that the accident was due to too great speed, but there is affirmative evidence from plaintiff's own witness O'Donnell that the cage was descending at its "natural speed."   This testimony could therefore have had no bearing upon the issue.   Ryan was lowering the cage as he had done hundreds of times before, at the same or less speed.   The speed, therefore, had nothing to do with the accident. *Core* v. *Railroad Co.*, 38 W. Va. 456; 1 Bailey, Mast. & Serv. § 1481; *Thompson* v. *Railway Co.* and *McNally* v. *Colwell, supra.*

6. It follows from what has already been written that defendant was not guilty of negligence in failing to watch Ryan, and ascertain how he was doing his work.   It exercised due care in employing him, and its engineer watched and instructed him when he commenced to work. The law imposed no further duty upon defendant until it had received notice of conduct which denoted incompetency.

The judgment must be affirmed.

The other Justices concurred.