LAYZELL v. J. H. SOMERS COAL CO.

1. MASTER AND SERVANT — PERSONAL INJURIES — NEGLIGENCE OF MASTER—VIOLATION OF STATUTORY DUTY—ASSUMED RISK.

The duty of the proprietor of a coal mine to employ competent and trustworthy engineers to operate cages and hoisting devices, as required by Act No. 100, Pub. Acts 1905, does not depend upon notification by the State mine inspector as provided by section 36 of the act, and employés of the mine do not assume the risk of injury through the negligence of an incompetent engineer, though the owner has used due care in the selection of an engineer, and has not been notified of the incompetence of the engineer selected. HOOKER, J., GRANT, C. J., and MONTGOMERY, J., dissenting, on the ground that due care to select an engineer of the prescribed class is all the statute requires.

2. SAME—EVIDENCE—INCOMPETENCE OF FELLOW-SERVANT.

In an action by an employé against a mine owner for injuries resulting from the negligence of an incompetent engineer, employed in violation of Act No. 100, Pub. Acts 1905, evidence of the habits of the engineer as to the excessive use of intoxicants, if within the knowledge of defendant's officers or agents, or of so notorious a character that they should have known of such habits, is material as bearing upon the engineer's competency and trustworthiness.

3. EVIDENCE — ADMISSIONS — DEFENDANT'S OFFICER — STATEMENT AFTER ACCIDENT.

In an action by an employé against a mine owner for injuries resulting from the negligence of an incompetent engineer, employed in violation of Act No. 100, Pub. Acts 1905, it was not error to exclude testimony tending to show statements of defendant's mine boss, made on the night after the accident, relative to the competency and trustworthiness of the engineer.

ON REHEARING.

MASTER AND SERVANT — PERSONAL INJURIES — STATUTES — CON-STRUCTION.

Act No. 100, Pub. Acts 1905, imposes upon the owners or operators of coal mines in this State a positive and continuing duty to employ only competent and trustworthy engineers to

operate the cages and hoisting devices in said mines, and ab-
rogates the common-law rule requiring reasonable care in
such selection, thereby making the master an insurer of
their competency and trustworthiness. OSTRANDER, GRANT,
and MONTGOMERY, JJ., concurring except as to the abroga-
tion of the common-law rule of reasonable care. HOOKER,
J., dissenting.

Error to Saginaw; Gage (William G.), J. Submitted
October 17, 1907. (Docket No. 85.) Decided June 27,
1908. Motion for rehearing granted September 8, 1908.
Reargued February 9, 1909. Former opinion affirmed
April 24, 1909.

Case by Charles Layzell against the J. H. Somers Coal
Company for personal injuries. There was judgment for
defendant on a verdict directed by the court, and plaintiff
brings error. Reversed.

*F. E. Emerick* and *W. J. Nash*, for appellant.

*W. J. Lamson*, for appellee.

McALVAY, J. Plaintiff brought suit against defend-
ant company to recover damages for personal injuries
received by him on account of the negligence of the offi-
cers and agents of defendant. From a judgment entered
for defendant upon an instructed verdict, plaintiff, upon
writ of error, brings the case to this court for review.

Plaintiff was employed on March 2, 1906, and for some
months prior thereto worked, as a pump man in the coal
mine of defendant at St. Charles, Michigan. At 9:30 p.
m. of that day plaintiff was required by his duties to go
down into the mine. In company with his helper named
McDonald plaintiff entered the cage at the top of the shaft,
and both men gave the proper signals to the man operat-
ing the levers in the engine room to be lowered down into
the mine. This operator, instead of manipulating the
machinery so as to lower the cage into the mine, did ex-
actly the opposite, and pulled his levers so as to cause the

cage suddenly and violently to be elevated, jerking it some 30 feet up the shaft and over the automatic tipple, a device for dumping coal, and throwing these men violently out of the cage into the coal hoppers, causing plaintiff serious and permanent injuries. The man operating the levers which controlled the cage and hoisting device in this coal mine on this occasion was named Saunders and was employed as fireman. The defendant placed its regular engineer at this work during the daytime, and this fireman during the nighttime.

The negligence relied upon and charged against defendant was that the fireman, Saunders, was a common laborer incompetent and lacking skill to take charge of the cages and hoisting devices used in this mine, and was a man addicted to the excessive use of intoxicating liquors, and was known to defendant's officers and agents to be reckless, unreliable, drunken, and incompetent to perform said work. The declaration also charged that defendant was negligent in disregarding a statutory duty imposed upon it by section 3 of Act No. 100 of the Public Acts of 1905, entitled:

"An act to provide for the protection of the health, lives and interests of the coal miners of Michigan, and to provide for the inspection of all coal mines in this State."

Section 3 provides:

"That only a competent and trustworthy engineer shall be permitted to operate the cages and hoisting devices in all coal mines of this State."

The plea of the defendant was the general issue. Such errors assigned as are material to the determination of the case will be considered.

In directing the verdict for defendant, the court, in his charge, among other things, said:

"Now, then, in this case counsel endeavored to distinguish this case from the common-law rule which I have stated to you by referring to certain authority in this State and out of it. * * * And they cite to sus-

tain that position the law of this State which was passed in 1905, known as Act No. 100, in which one section says:

"'SEC. 3. That only a competent and trustworthy engineer shall be permitted to operate the cages and hoisting devices in all coal mines of this State.'

"And they plant their right to recover upon that provision of the statute. Now the cases where the court has said in this State that the plaintiff might recover and that there was no assumption of risk where the statute provided that the duty that the employer should perform toward the employé for his protection was the case where the statute contained a penalty for the violation of it. * * * There is no penalty in this statute for the failure to perform."

The court then quoted the last section of the act making it a misdemeanor to refuse to comply with a certain notice, and proceeded:

" So the employer is not guilty of a misdemeanor until the State mine inspector has notified him and that he has failed to comply with the notice to do, within a reasonable time."

The case cited and quoted from in his charge and upon which the court relied, *Walkowski* v. *Consolidated Mines*, 115 Mich. 629 (41 L. R. A. 33), was decided before any statute was enacted imposing a duty upon the employer as to operating cages and hoisting devices in coal mines, so no question was in that case as to the neglect of duty and the case is not in point.

The construction of the court was that the statute invoked by plaintiff contained no penalty and therefore the neglect of the duty imposed did not bring the case within the cases relied upon by plaintiff. In *Swick* v. *Cement Co.*, 147 Mich., at page 457 et seq., where a similar contention is discussed under a similar statute, the conclusion of the Justices concurring in the opinion is that the statute imposed the duty without reference to the action of the factory inspector, and in case of neglect of that duty the doctrine of assumed risk could not be asserted as a defense. In this conclusion we concur. This statute does

not make the performance of the duty depend upon the action of the mine inspector. It is imposed by the third section of the act without condition, and without reference to the steps necessary to be taken in order to penalize parties for their neglect. This section of this statute imposed the duty upon defendant to employ an *engineer*, competent and trustworthy, and to permit *only* such an one to operate the cages and hoisting devices in its mine. The legislative intent in providing for the protection of the lives of miners is clearly expressed in this section. The intention is not to allow the employment of any man, and put him at this work to learn his trade as an engineer, but that the man put at *this work* must be *then* a competent and trustworthy engineer. Plaintiff had a right to rely upon the performance of this duty by his employer.

It is not a question of the care used by the defendant in its selection, if the person selected was not "a competent and trustworthy engineer," for the reason that, under the statute, such is the only selection provided for. This is not an insurance that accidents will not occur, but an insurance that the employé selected is within the class designated by the statute. It follows that if the statute has not been complied with, the defense of assumption of risk, or negligence of a fellow-servant, cannot be asserted. The court was in error in directing a verdict for defendant. The case should have been submitted to the jury with instructions conforming with the views above expressed.

The court was also in error in excluding evidence of the habits of Saunders as to the excessive use of intoxicants, if within the knowledge of defendant's officers or agents, or of so notorious a character that they should have known of such habits. It was material as bearing upon his competency and trustworthiness. The testimony of the machinist and blacksmith should have been admitted for the same reason. It was not error to exclude the testimony of plaintiff's witness to show statements of defendant's mine boss, Jenkins, made on the night after

the accident, relative to the competency and trustworthiness of Saunders.  In view of the foregoing statements in this opinion, the other errors assigned need not be discussed.

The judgment is reversed and a new trial ordered.

BLAIR, OSTRANDER, MOORE, and CARPENTER, JJ., concurred with McALVAY, J.

HOOKER, J. ( *dissenting* ).  The plaintiff was injured by being raised in defendant's mine hoist, and dumped over the "tipple."  The cause was the shifting a lever in the wrong direction through mistake, by defendant's employé in charge of the hoist.  The plaintiff was seriously hurt, and charges negligence upon the defendant.  Our statute, Act No. 100, Pub. Acts 1905, is relied upon.  The title of the act to which it was amendatory was:

"An act to provide for the protection of the health, lives and interests of the coal miners of Michigan, and to provide for the inspection of all coal mines in this State."

Section 3 provides:

"That only a competent and trustworthy engineer shall be permitted to operate the cages and hoising devices in all coal mines of this State."

Section 36 provides:

"Any owner, part owner, operator, manager, or superintendent of any such coal mine, or director or officer of any stock company owning or operating any such mine, who shall wilfully violate any of the provisions of this law by omitting to comply with any of its said provisions, after a reasonable length of time after notice of such omission, by the State mine inspector shall, if not otherwise provided for, be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished," etc.

The negligence relied upon is the failure of the defendant to employ "a competent and trustworthy engineer" to operate the hoist, and counsel say in their brief:

" Our position in this case is that, under the evidence, the

156 MICH.—18.

sole question and issue was and is the competency of Saunders. The statute imposes a specific duty to provide at this post a competent and trustworthy engineer. If the man Saunders was in fact incompetent and untrustworthy, either or both, the plaintiff was entitled to recover. Under this statute it is no defense to say defendant had no notice or knowledge of such incompetency or untrustworthiness. It is no defense to say that plaintiff had knowledge of such incompetency and should have imparted that knowledge to defendant. It is no defense to claim that plaintiff assumed the risk of negligence of a fellow-servant. All of these questions, we assert, were eliminated from the case by the effect and operation of the statute, and that therefore the manner and cause of the injury not being disputed as being the negligent act of Saunders, not in any wise contributed to by any want of care on the part of plaintiff or the other man in the cage, or any defect in the machinery, and there being positive evidence in the case of the incompetency of Saunders at and before the time of the injury in this employment, the case should have been submitted to the jury."

Plaintiff's counsel claim, *first* that there was evidence showing that Saunders was not an engineer and therefore that the jury might find that defendant had not complied with the statute and was liable. They also claim that there was evidence that Saunders was incompetent to run the elevator, and that he was a man who habitually made use of intoxicating liquor while at work, which tended to show untrustworthiness. As indicated by the quotation from the brief, it is plaintiff's claim that the statute imposed a positive duty to secure a competent and trustworthy engineer, at the master's peril.

The statute in question should not be held to impose upon the mine owner the obligation of infallibility in the selection of employés unless we are prepared to say that it was intended to make him an insurer. It may reasonably be held that it was the legislative design to require the employment of an engineer,—competent and trustworthy, but we see no indication of an intention to abrogate the general rule that only reasonable care and diligence in ascertaining the qualifications are required, to re-

lieve from the charge of negligence. The case of *Mul-hern* v. *Coal Co.*, 161 Pa. 270, is substantially on all fours with this case, the statute in that State being very similar to our own. It was there held that it had not the effect to change the common law relating to negligence in the employment of men. Apparently the statutes are from a common source, if our statute was not framed upon the Pennsylvania model. This construction was practically given in the *Walkowski Case*, 115 Mich. 629 (41 L. R. A. 33).

The defendant offered testimony tending to show that Saunders was a competent engineer when he was hired. Its officers made inquiries regarding his habits, competency, and trustworthiness. Rolfe, Saunders' stepson, himself a man of experience with engines, told them that Saunders had fired and run an engine at Coleman, and fired in a saw mill; that he claimed to be an engineer, had run an engine all his life, and that he personally knew he had run an engine two years; that he was a straight, reliable man, and he considered him all right. This witness understood that it was the general custom for the head fireman to run and operate the cages or hoists at night. Beecher, defendant's officer who hired Saunders, testified that he knew Saunders 18 months before hiring him, and before he hired him he talked with Mr. Rolfe, a relative of Saunders, about his age, experience, and strength, and was told that he was steady, reliable, and experienced, and had run a locomotive. When Beecher employed him, he first set him at work as assistant fireman. He worked satisfactorily at that for two or three months, and then he made him head fireman, "his duties as head fireman to be first engineer as much as anything else." He was held responsible for the operation of the plant at night. He ran the engines for the fans to ventilate the mine, one for the generator, and one for the hoist, and he did this for at least 14 months before the accident. He did this under Beecher's supervision, who never discovered anything wrong with him and never heard any com-

plaints. We discover no contradiction in the testimony in relation to defendant's care. The only evidence which is offered upon the subject of Saunders' competency and trustworthiness, is that of two other employés who said that he had a bad reputation among the men, and that he used intoxicating liquor while at work, but both admitted that they did not inform defendant's officers of it, which they would perhaps be unlikely to do, as they belonged to the same union with the plaintiff. Of the two who did testify that they thought him unfit, one gave the reason that he was "nutty," which he explained to mean had mad fits. This witness said he had spoken about it to other employés, but never to any representative of the company. The other told what some shift boss had said when told of the accident, which was hearsay testimony, not admissible. It was also said that he sometimes let the cage strike the ground hard, but no one seems to have informed the officers of that. I am of the opinion that the uncontradicted testimony showed an absence of any negligence in the employment of Saunders to do this work, in addition to which there is evidence of 14 months subsequent satisfactory service, which we have said to be the best evidence of competency. See *Walkowski* v. *Consolidated Mines*, 115 Mich. 629 (41 L. R. A. 33).

It is conclusively proved that Saunders was an engineer every way competent to run the hoisting apparatus and the engines, and that the only thing lacking was infallibility. We held in the case last cited that:

" The fact that an employé, after operating machinery correctly for several months, forgot on one occasion, and turned a brake the wrong way, thereby causing injury to a fellow-servant, has no tendency to show incompetency.

" Evidence that the fellow-servants of an employé, in the retention of whom the master is alleged to have been negligent, had talked among themselves that he did his work improperly, is not admissible to prove general reputation for incompetency."

There is no evidence that he was not a trustworthy man

Why he made the mistake does not appear. It is not shown that he was angry, "nutty," as Van Sickle called it, nor is there any evidence that he was intoxicated, neither is there anything to indicate that his management of the engines had anything to do with it; so if there had been negligence in those matters, it could hardly be said that such negligence caused the accident. It was said in *Walkowski* v. *Consolidated Mines,* supra:

"Evidence that the person in charge of the brake by which was controlled the hoisting and lowering of the passenger cages in a mine was in the habit of lowering the cages at too great speed is not admissible upon the question of his incompetency in an action for injuries caused by his turning the brake the wrong way and letting the cage fall."

Under the proof in this case, it was the duty of the trial judge to say that defendant had shown due care in the employment of Saunders. If he was negligent, the plaintiff's action should have been brought against him. He has signally failed to prove negligence on the part of defendant.

The judgment should be affirmed.

GRANT, C. J., concurred with HOOKER, J.

MONTGOMERY, J. I concur in the view that the defendant is not an insurer of the competency of the engineer, and that the employer discharges his duty when proper care is exercised in the employment and selection of the servant.

### ON REHEARING.

McALVAY, J. In an opinion written and handed down in this case when it was first before this court, a majority of the justices concurred in a reversal. Ante, 268. Then, as now, the question of importance in the case was the construction of section 3 of Act No. 100, Pub. Acts 1905. Errors of minor importance which were pointed out in the former opinion need not be again discussed. They were not discussed upon the reargument. The question upon the

construction of the statute is whether by its enactment the common-law rule, that only reasonable care and diligence in ascertaining the qualifications of the engineer are required to relieve from the charge of negligence, has been changed; in other words, whether the enactment was intended to and did impose upon the employer any other or further duty relative to hiring the engineer designated, than rested upon him before it became a law. This provision was first enacted in 1899. (Act No. 57, Pub. Acts 1899.) This act was amended in 1905; many provisions being added. No change was made in section 3 under discussion. The act of 1899 made the violation or omission to comply with any of its provisions a misdemeanor, punishable by fine or imprisonment, or both. By the law of 1905 the same penalties attach for failing to comply with any of its provisions, after reasonable notice given by the State mine inspector. An examination of the entire statute, its positive requirements and its penal provisions, confirms us in the opinion that by it a positive and continuing duty was imposed upon the mine owner or mine operator, and he was made in that respect the insurer of the competency and trustworthiness of the engineer permitted to operate the cages and hoisting devices in all mines in this State. The contrary construction makes this section of no force or effect. It is a remedial statute and should be construed liberally and beneficially. Such construction, however, need not be invoked to discern the plain intent of the legislature to abrogate the common-law rule of reasonable care and diligence and to impose an absolute duty upon the employer.

Since the former opinion reversing this case was filed, a very interesting case decided by the United States Supreme Court has been published, which may be considered as sustaining our reasoning in this case. *St. Louis, etc., R. Co.* v. *Taylor*, 210 U. S. 281. The Federal statute construed related to certain drawbars required on freight cars, used in interstate commerce by

railroads, being the safety appliance act of 1893 (27 U. S. Stat. 531). The court said:

" The plaintiff in error raises another question which, for the reasons already given, we think is of a Federal nature. The evidence showed that drawbars which, as originally constructed, are of standard height, are lowered by the natural effect of proper use; that, in addition to the correction of this tendency by general repair, devices called 'shims,' which are metallic wedges of different thickness, are employed to raise the lowered drawbar to the legal standard; and that, in the caboose of this train, the railroad furnished a sufficient supply of these shims, which it was the duty of the conductor or brakeman to use as occasion demanded. On this state of the evidence the defendant was refused instructions, in substance, that, if the defendant furnished cars which were constructed with drawbars of a standard height, and furnished shims to competent inspectors and trainmen, and used reasonable care to keep the drawbars of a reasonable height, it had complied with its statutory duty, and, if the lowering of the drawbar resulted from the failure to use the shims, that was the negligence of a fellow-servant, for which the defendant was not responsible. In deciding the questions thus raised, upon which the courts have differed (*St. Louis R. Co.* v. *Delk*, 158 Fed. 931, 86 C. C. A. 95), we need not enter into the wilderness of cases upon the common-law duty of the employer to use reasonable care to furnish his employé reasonably safe tools, machinery, and appliances, or consider when and how far that duty may be performed by delegating it to suitable persons for whose default the employer is not responsible. In the case before us the liability of the defendant does not grow out of the common-law duty of master to servant. The congress, not satisfied with the common-law duty and its resulting liability, has prescribed and defined the duty by statute. We have nothing to do but to ascertain and declare the meaning of a few simple words in which the duty is described. It is enacted that 'no cars, either loaded or unloaded, shall be used in interstate traffic which do not comply with the standard.' There is no escape from the meaning of these words. Explanation cannot clarify them, and ought not to be employed to confuse them or lessen their significance. The obvious purpose of the legislature was to supplant the qualified duty of the com-

mon law with an absolute duty deemed by it more just. If the railroad does, in point of fact, use cars which do not comply with the standard, it violates the plain prohibitions of the law, and there arises from that violation the liability to make compensation to one who is injured by it. It is urged that this is a harsh construction. To this we reply that, if it be the true construction, its harshness is no concern of the courts. They have no responsibility for the justice or wisdom of legislation, and no duty except to enforce the law as it is written, unless it is clearly beyond the constitutional power of the lawmaking body. It is said that the liability under the statute, as thus construed, imposes so great a hardship upon the railroads that it ought not to be supposed that congress intended it. Certainly the statute ought not to be given an absurd or utterly unreasonable interpretation, leading to hardship and injustice, if any other interpretation is reasonably possible; but this argument is a dangerous one, and never should be heeded where the hardship would be occasional and exceptional. It would be better, it was once said by Lord Eldon, to look hardship in the face rather than break down the rules of law; but, when applied to the case at bar, the argument of hardship is plausible only when the attention is directed to the material interest of the employer to the exclusion of the interests of the employé and of the public. Where an injury happens through the absence of a safe drawbar, there must be hardship. Such an injury must be an irreparable misfortune to some one. If it must be borne entirely by him who suffers it, that is a hardship to him. If its burden is transferred, as far as it is capable of transfer, to the employer, it is a hardship to him. It is quite conceivable that congress, contemplating the inevitable hardship of such injuries, and hoping to diminish the economic loss to the community resulting from them, should deem it wise to impose their burdens upon those who could measurably control their causes, instead of upon those who are, in the main, helpless in that regard. Such a policy would be intelligible, and, to say the least, not so unreasonable as to require us to doubt that it was intended, and to seek some unnatural interpretation of common words."

Following this case, and ruled by it, the United States circuit court of appeals for the eighth circuit (sitting at

St. Louis), on August 22, 1908, in two cases, Judge Van
Devanter speaking for the court, held:

"The safety appliance law of congress, in the situations
in which it is applicable, imposes upon a railway company
an absolute duty to maintain the prescribed coupling ap-
pliances in operative condition, and is not satisfied by the
exercise of reasonable care to that end." *United States*
v. *Atchison, etc., R. Co.*, 163 Fed. 517; *United States*
v. *Denver, etc., R. Co.*, 163 Fed. 519.

If it be argued that the *Taylor Case*, supra, is dis-
tinguishable from, and not applicable to, the case at bar,
for the reason that in the *Taylor Case* it was possible
always to know the height of the drawbars, but in the
case at bar it would be impossible to tell when a compe-
tent and trustworthy engineer had lapsed from the re-
quired standard, as far as this particular case is concerned,
the argument is answered by the record, which shows
that no attempt has ever been made to comply with the
requirements of the statute, and generally that it is a
question of the degree of diligence required, to know that
the engineer keeps up to statutory standard, a matter
for legislative and not judicial consideration. Relative
to the clear, simple, and easily understood words of this
statute under discussion, it may also well be said:

"There is no escape from the meaning of these words.
Explanation cannot clarify them and ought not to be em-
ployed to confuse them or lessen their significance. The
obvious purpose of the legislature was to supplant the
qualified duty of the common law with an absolute duty
deemed by it more just."

If an absolute duty is imposed by this statute, then
from the violation of its plain prohibitions there arises a
liability to make compensation to one who is injured
thereby.

It is claimed that this act of 1905 is borrowed from or
founded upon the Pennsylvania statute. Whether or not
this is so does not appear. In construing a section claimed
to be similar to the one in question, the supreme court of

Pennsylvania held that the statute has not changed the common-law rule that only reasonable care and diligence in ascertaining the qualifications of the engineer is required to relieve from the charge of negligence. *Mulhern* v. *Coal Co.*, 161 Pa. 270. A comparison of these statutes will be instructive. The Pennsylvania law provides:

"An engineer placed in charge of an engine, whereby persons are hoisted or lowered in any mine, shall be a sober and competent person and not less than twenty-one years of age." Act No. 170, Laws 1885, art. 12, rule 18.

Our statute reads:

"That only a competent and trustworthy engineer shall be permitted to operate the cages and hoisting devices in all coal mines of this State." Section 3, Act No. 100, Pub. Acts 1905.

These statutes are not similar. The Pennsylvania statute makes no change whatever in the common-law rule of reasonable care and diligence. The word "employé" might be substituted for "engineer" in the first line without changing its legal effect. In case of the injury of a miner by reason of the negligence of this engineer, the doctrine of assumed risk would apply, if it appeared that the employer has used reasonable care and diligence in his selection. The Michigan statute *prohibits* the employment of any except a competent and trustworthy engineer. Only such an one *shall be permitted to operate the cages*, etc. From these words we derive our construction that a duty is imposed, from the violation of which a liability arises to compensate the person injured thereby.

The intent of the statute is that this trustworthy and competent engineer who is permitted to operate these cages shall, while his duties call him to do this work, be an engineer in fact as well as by profession, and not at the same time be performing the duties of a fireman or of any other employé, thereby being absent from his engine and having his mind burdened and distracted from the work

of caring for the lives and safety of the men he lifts from and lowers into the mine. In the case at bar, and the companion case which was reargued at the same time, the so-called engineers were firemen. They were employed as firemen, and during the "shifts" when they were permitted to operate the cages were working as firemen at the boilers, from which work, in both instances when these accidents occurred, they were called to operate the cages. In the case at bar, the boiler room contains a battery of six boilers and is separate from the engine room. The fireman Saunders, when notified that the parties were ready to go down, said: "As soon as I throw this fire on." He did this, and then went to the engine room. Plaintiff and the man with him went into the cage and called: "All right," and signaled with their lamps. The cage shot up 30 or 40 feet to the top of the tipple, and automatically emptied the men upon the rock dump.

There can be no question in what capacity these men were employed. The testimony of defendant's principal witness, the chief engineer of the mines, who hired Saunders, shows:

"In the daytime we had three men—head and tail fireman and the engineer. At night the head fireman [Saunders] shovels coal into the furnaces and looks after the steam. If a man wanted to go down, the head fireman would be called from the boilers to the levers."

The record shows that but one engineer was hired at this mine who could be classed as a "competent and trustworthy engineer." He worked in the daytime, when only coal was handled, and operated the cages like magic, as defendant's counsel has stated it. The miners, for the protection of whose lives and interests this law was enacted, were turned over to a fireman to practice upon. The testimony of defendant's chief witness who hired Saunders shows further that he did not know how to operate the cages and run the engines at the time he was hired, nor until three months afterwards, when, this

witness says, "I showed him how to operate the cages and run the engines." He was first put on as assistant fireman for three months, and then advanced to head fireman. While it is true that this witness stated that the one man he inquired of concerning Saunders' qualifications' said that he had previous experience as an engineer, and had run a locomotive, yet the testimony of this witness shows that he was not a competent and trustworthy engineer when hired and was not accepted or treated as such, and the general superintendent testifies that there never was a regular engineer on the night shifts. The defense in this case does not claim, either in the record or upon the argument, that Saunders ever was an engineer. It is urged that he was simply an employé and was referred to only as such. This is referred to for the purpose of showing that defendant has absolutely disregarded the provisions of this statute. In fact, the whole testimony of the chief engineer shows that in his opinion an engineer was not necessary to perform this work, that it needed but very little experience by any ordinary man, and that the operator need have no knowledge as to the construction of, or technical knowledge concerning, engines. Whatever may be the differences of opinion as to the continuing duty of the employer relative to the competency of the engineer, all of the members of this court will agree that the statute requires that only a competent and trustworthy engineer may be hired to do this work. It follows, therefore, if our conclusion as to the record made by defendant is correct, that defendant did not comply with the statute in that regard, and is liable for damages resulting therefrom.

Further discussion of the question is not necessary. The legislature has thrown certain safeguards around the health, lives, and interests of coal miners. The business at best is extrahazardous. The legislation was required and not unreasonable. With the extra burden which it may possibly put upon the owner or operator, the courts have nothing to do. Upon the legislature such responsi-

bility rests.   Our duty ends with ascertaining and declaring the legislative intent.

We add this to the former opinion in the case, and, for the reasons herein and therein given, hold that the court below was in error, and that the judgment should be reversed, and a new trial ordered.

BLAIR, C. J., and MOORE and BROOKE, JJ., concurred with McALVAY, J.

OSTRANDER, J.   When this case was first presented in this court (ante, 268), the question being the meaning and effect of the words, ",that only a competent and trustworthy engineer shall be permitted to operate the cages and hoisting devices in all the coal mines in this State," a majority of the Justices concurred in saying that:

" The legislative intent in providing for the protection of the lives of miners is clearly expressed in this section. The intention is not to allow the employment of any man, and put him at this work to learn his trade as an engineer, but that the man put at this work must be then a competent and trustworthy engineer.   Plaintiff had a right to rely upon the performance of this duty by his employer. It is not a question of the care used by the defendant in its selection, if the person selected was not ' a competent and trustworthy engineer,' for the reason that under the statute such is the only selection provided for.   This is not an insurance that accidents will not occur, but an insurance that the employé selected is within the class designated by the statute."

In the minority opinion, attention is directed to a contention made in behalf of the plaintiff to the effect that if the person operating the cages was in fact incompetent and untrustworthy, either or both, plaintiff was entitled to recover, because it was not a good defense for defendant to show that it had no notice or knowledge of such incompetency.   With respect to this, three of the justices expressed the opinion that the effect of the statute was

not to make the employer an insurer of the competency and trustworthiness of an engineer. In the majority opinion, from which the quotation is made, is language which may be, and perhaps ought to be, interpreted as affirming the rule of responsibility of the employer which is clearly and unmistakably stated in the opinion of Mr. Justice McAlvay, written since the reargument of the case. The manifest propriety of removing doubt, if doubt existed, concerning the force and effect of the majority opinion, was a sufficient reason for granting a rehearing. We have had the benefit of additional briefs, and of an oral argument and have re-examined the case. I have been and am now of opinion that the significant word in section 3 of the statute is the word "engineer." It was the common-law duty of the employer to permit none but a competent and trustworthy person to operate the cages, to exercise due care in selecting the person and due care in observing him after his selection. See *Walkowski* v. *Consolidated Mines*, 115 Mich. 629 (41 L. R. A. 33). The legislature sought to increase the margin of safety by limiting the right of selection. It prescribed a class from whom those permitted to operate the cages shall be selected, and, in so doing, in some degree fixed a status of capability, of efficiency, for the operators of cages in coal mines. If the qualifying words, "competent" and "trustworthy," used in this statute, have a greater significance than they would have if used with the word "person" or "boy" or "man," it is because of their connection with the word "engineer." Assuming, as we must, that, in the absence of these qualifying words, the engineer employed must be both competent and trustworthy, the conclusion announced in the majority opinion, first delivered, is right, because there was testimony tending to prove that the man in charge of the hoisting device at the time plaintiff was injured was not selected or employed as one of the statute class, that the master did not test or measure him by a standard applicable to engineers.

The court below having directed a verdict for defendant, reversible error was, upon this theory, established. I am still of opinion that, for the reasons stated, the judgment should be reversed and a new trial ordered.

I do not, however, concur in the view that the master is made an insurer of the competency and trustworthiness of the engineer, and I think this case and the one of *St. Louis, etc., R. Co.* v. *Taylor*, 210 U. S. 281, distinguishable. The arguments in favor of a readjustment of the relations of master and servant in such wise that employés suffering injuries in the course of employment shall not, as often as they have done, bear the entire resulting hardships and burdens, appeal, it may be assumed, as well to judges as to others. Whether the burdens shall immediately rest upon the employer, or partly upon the employed, whether they shall be ultimately cast upon the whole community, or shall be insured against by contributions made by the employer and employed, are questions of policy, interesting indeed, but in no sense judicial. Assuming the power of the legislature to impose the burden, in a particular class of cases, upon the employer, whether it has exercised the power is a question of interpretation or of construction of the legislative enactment. Mere interpretation of this statute does not support the conclusion that such a burden is imposed. Undoubtedly the words employed are clear, their legal effect is not necessarily the one contended for by the plaintiff. It goes without saying that by the rules of the common law, which the courts are bound to apply, which by the terms of the Constitution itself are in force in this State, negligence on the part of the master, causing or contributing to the injury of the servant, must be established before a servant, not himself negligent, can require the master to indemnify him for injuries received in the course of the employment; and negligence, either of master or servant, involves some want of prudence, some failure to take care, resulting in what might have been, by due care, prevented. The stat-

ute here in question gives an injured employé no right of action against his employer. It is by force of a rule of the common law that in such cases one injured by failure to perform a statute duty, imposed upon another for his benefit, may have his action for a breach of the duty. His action is in essence, as it is in form, an action ex delicto—for a wrong, a tort. The term "duty," in the law of negligence, implies an obligation which the one who owes it can discharge. This is true whether the duty is or is not called a "positive duty" or a "nondelegable duty" of the master.

I have attempted to show that section 3 of this statute does not need, in order to give it effect, the construction which is put upon it by Mr. Justice McALVAY. In any event, treated as a statute imposition of a duty for the benefit of the plaintiff, the duty can be measured only by common-law rules. Unlike the one considered in *St. Louis, etc., R. Co.* v. *Taylor,* supra, this statute furnishes no standard of performance. The essence of the reasoning of the court in that case is that the statute there in question created a legal standard with which equipment of cars was required at all times to conform. Companies were not commanded to use safe and trustworthy cars. The command was the positive one to at all times use standard cars and to use no others. The court declined to entertain a rule according to which the questions whether cars were reasonably up to the statute standard, and whether the railroad companies or their employés were responsible for deficiencies, should be determined by successive juries in successive actions. By what rule or standard shall a competent and trustworthy engineer be selected? And by what rule shall the master discover that his engineer has become temporarily or permanently inefficient? There is but one rule, and that is the rule of due care. Unless this rule may be employed, the master cannot discharge his statute obligation. In my opinion it is a rule of necessity; but, in any event, none other be-

ing declared, it is the rule implied by the legislation itself.

GRANT and MONTGOMERY, JJ., concurred with OS-TRANDER, J.

HOOKER, J. (*dissenting*).    I adhere to the views expressed in my former opinion, and find nothing in this statute precluding the operation of boiler, engine, and hoist by one who is a competent engineer.