PEOPLE *v.* BEDELL.

1. TRIAL—CRIMINAL LAW—ARGUMENT.

   In a prosecution for violation of the local-option law, argument of the prosecutor that persons frequently met at the respondent's room and made it a rendezvous, objected to by respondent's attorney on the ground that the testimony referred to was stricken from the record, was not reversible error where it was withdrawn from the jury by the interposition of the court at the time and later in his charge.

2. INTOXICATING LIQUORS—LOCAL OPTION—GIVING AWAY SPIRITUOUS LIQUORS.

   It was not error to charge the jury, in a criminal proceeding for violation of the liquor law in a county which had adopted prohibition, that obtaining intoxicating liquor, keeping it on ice with intoxicants belonging to another in respondent's bedroom, and permitting third persons to come and drink of it at will, constituted a violation of law. *People* v. *Peterson,* 156 Mich. 235 (120 N. W. 570, 21 L. R. A. [N. S.] 134), distinguished.

Exceptions before judgment from Kalkaska; Lamb, J. Submitted April 22, 1910. (Docket No. 143.) Decided July 14, 1910.

Frank Bedell was convicted of violating the local-option law. Affirmed.

*Gaffney & Miltner,* for appellant.

*Ernest C. Smith,* Prosecuting Attorney, for the people.

MOORE, J. The information filed in this case charges that the respondent, Frank Bedell, on the 14th day of September, 1909, at the town of Boardman, in the county of Kalkaska, did give and furnish to one Judd Richardson a certain quantity of spirituous and intoxicating liquors, to wit, beer; said beer being then and there so given and furnished contrary to the local-option law in

force in the county of Kalkaska. The respondent was convicted after a trial before a jury, and brings the case to this court on exceptions before sentence. It is admitted that he was not a druggist nor a registered pharmacist. At the close of the testimony for the people, the court was requested to discharge the respondent for the reason that there was no evidence of any violation of the law. No evidence was offered on the part of the respondent. The court charged the jury, in substance, that if Bedell gave or furnished Richardson some of this beer in those rooms, the law was violated, and the verdict should be guilty as charged.

The errors assigned are stated by counsel in their brief as follows:

"The verdict should be reversed: *First*, because of the improper remarks of the prosecuting attorney; and, "*Second*, Because the evidence introduced in the case does not show that the offense alleged was committed, and we further submit that the respondent should be discharged."

As to the first of these propositions, the following occurred. The prosecuting attorney in his argument said:

"Those men met there that afternoon; that they met there often; that they made it their place of meeting; that it was their rendezvous.

"*Mr. Gaffney:* We object and except to that remark of the prosecuting attorney—this is not a charge of keeping a place where liquors are furnished or given away. The testimony concerning everything that took place there on the evening of the 14th of September was stricken from the record and counsel has no right to refer to it at all.

"*The Court:* I think you had better confine yourself to the testimony as admitted, Mr. Smith.

"*Mr. Smith:* I am simply mentioning, gentlemen of the jury, the statement that was made in open court at that time.

"*Mr. Gaffney:* We object to that remark as highly improper and we take exception to it."

Mr. Smith, in closing his argument, said:

"And we will be satisfied, gentlemen, with your verdict, which, in this case, we believe, cannot be otherwise than a verdict of guilty."

Not content with what was said at this time by the court, counsel for respondent asked the court to say to the jury:

"I further charge you that there was some testimony of something occurring in respondent's room on the evening of the 14th day of September, which was stricken from the records, and I charge you that you must consider this testimony as never having been given. You are to give it no consideration, nor should you allow it to enter into your consideration of the case."

This request was given. What occurred as to this feature of the case is not reversible error.

2. Should the trial court have directed a verdict for respondent? Did he err in saying to the jury:

"Now, gentlemen, I charge you, as a matter of law, that if you find from the evidence in the case beyond a reasonable doubt, that the respondent, Frank Bedell, had liquor, to wit, beer, in his bedroom on the day in question, at the village of South Boardman, in the county of Kalkaska, and that he placed the can in which the beer was on ice, where it was accessible to persons who might frequent the room in question, and that, with his knowledge and consent, several men, including Mr. Richardson, came to the bedroom on the day in question, and that said Bedell knowingly allowed and permitted said Judd Richardson to partake of the liquor, to wit, beer, so procured by said Bedell and by him placed on ice in his bedroom, such a state of facts would constitute a giving and furnishing of liquor within the meaning of and in violation of the local-option law, as now in force in this county."

It is claimed that respondent was in the exercise of an act of hospitality, and that the case is on all fours with the case of *People* v. *Peterson*, 156 Mich. 235 (120 N. W. 570, 21 L. R. A. [N. S.] 134). In this connection it is important to learn what is disclosed by the testimony: Judd Richardson, sworn for the people, testified as follows:

"Am acquainted with Frank Bedell and is in the barber business and runs a shop in South Boardman. We were both living in South Boardman during the month of September of this year, at which time Bedell was running a barber shop on the same business street where the post office is. Was in Bedell's barber shop September 14th last; first, about three o'clock in the afternoon. Bedell was there. Went in to set down and rest and stayed about fifteen or twenty minutes. Went back into the next room opening off the shop. He had some clothing, chairs, and one thing and another in there. Clothing hanging on the wall. Room was about 12x20 feet. Passed into the next room which led off from this one and which was his private room, in which there was a bed and some clothing. This room was about 10 feet square, in which was William Taylor and George Burdick. Bedell went in with me. Burdick and Taylor were talking when I went in and were setting down, one on a chair and the other on the edge of the bed. Saw some liquor setting on the floor some time after I went in, in a quart bottle, to which I helped myself and drank some and then set it back. Made no inquiries and did not learn whose liquor it was at the time. Just went in, saw the bottle, took it up and drank from it without being invited by any one. No one invited me in there in the first place. Followed Bedell in. He just opened the door and I followed him in. Never was in there before. Went in to talk with Bedell and did not know what his business was in the back room and couldn't say that he was there when I drank the whisky. He went back in the barber shop. Drank some beer which set on the floor with the rest, to which I helped myself. Bedell was not there then; he had gone back into the shop. It was on the floor when I went in, by a can in which there was some ice. I followed Bedell into the room, where we stayed about five minutes and then went back. While Bedell was there Burdick, Taylor, and myself were just talking. I saw nobody drinking then, nor until after Bedell went out. I was there about one hour and took three or four drinks from one beer bottle. Bedell passed through at different times. Did not see him drink, nor was there anything said about it, nor did he say anything about drinking to me. Think he was working in the shop and occasionally came back where we were. Did not know there was any liquor before I went in and did not know where the liquor

or beer came from, and did not find out. Testified before the justice of the peace in my cross-examination that George Burdick brought the liquor there, which was what I heard after I left the barber shop. Did not hear it at the time. I left the room first. While there I think Ben Allen and Ernest Murphy came in. They stated no business and came in to visit with the rest of us, and I think drank while there. They drank out of the bottles of beer on the floor, which was all that I saw. Think we all left about four o'clock, together."

Upon the cross-examination witness testified as follows:

"The defendant's shop is the front end of the building at the north side of the street and faces west. It is partitioned off so that it can be entered from the barber shop through which you go back into a couple of rooms that he keeps for a bedroom. The shop door faces the east; to come in and set down and visit, which is customary, and on this day we went into the back room with Bedell and found Taylor and Burdick there, one setting on the bed and the other on a chair, and after being there a few minutes, noticed that there was a bottle of whisky on the floor. Took it up and took a drink out of it and placed it back upon the floor. Do not know whether Bedell was there at that time or not. Did not see him drink any whisky and said nothing to me about drinking liquor, nor called my attention to the liquor, nor said anything to anybody about drinking liquor in there. We were there about one hour, during which Bedell passed in and out through the room out of the back door three or four times."

Upon redirect examination witness testified as follows:

"When I went in, did not know that Taylor or Burdick were there, nor that there was any liquor there. Just went in to talk with Bedell and stayed with the rest of the boys. There were some clothes, overcoat, bed, and some other barber fixtures there. Saw no sweepings nor any great amount of empty bottles piled up. I seen some bottles in the room, but cannot say how many. Did not notice any barrels."

There was much other testimony of a like character. As before stated, no testimony was offered on the part of respondent. A reference to the case of *People* v. *Peter-*

*son, supra,* will show it easily distinguishable from the case at bar. In the case of *People* v. *Giddings,* 159 Mich. 523 (124 N. W. 546), it was claimed that one Foster saw a small bottle of whisky on a table belonging to respondent, from which he poured a small quantity of whisky into a cup into which respondent poured some hot water, after which the witness drank the mixture. In disposing of the case Justice MCALVAY, speaking for the court, said:

" In view of a new trial which must be had, some other questions must be passed upon. One contention of respondent was that if liquor was furnished Foster by Giddings, it was furnished to a guest and not unlawfully. There is nothing in the case which would warrant the court in giving a request to charge embodying that contention. This case is clearly distinguishable from the cases of this court relied upon by respondent. The court was not in error in refusing such request to charge."

In the case of *People* v. *Myers,* 161 Mich. 40 (125 N. W. 701), where the respondent, who was a clerk in a hotel in a local-option county, had gratuitously, and for social purposes, furnished some dining room girls with beer in their rooms, it was held he had violated the law. In disposing of the case, Justice BLAIR, speaking for the court, said:

" The Michigan act under consideration includes within its title a prohibition of the giving away of intoxicating liquors in local-option counties; the first section makes it unlawful for any person to give away such liquors, and the act has been repeatedly held constitutional in every respect. The general liquor law deals with the regulation of a legitimate business. The local-option law was intended, in my opinion, not only to wipe the business out of existence in the county, but to prevent the inhabitants of the county from obtaining liquor within the county. For the latter purpose, the act prohibits any person from giving away intoxicating liquor, and thereby heads off the numerous subterfuges which would interfere with the enforcement of the law. We have held that the statute was not intended to prohibit the individual use of intoxicating liquors, nor to invade the privacy of the home and inter-

fere with the owner's decent exercise of hospitality towards his guests, but we do not think the terms of the act warrant a further limitation of its operation."

The facts disclosed by the record before us do not show a case of the exercise of a justifiable act of hospitality, but, on the contrary, show the conducting of what is vulgarly known as a "blind pig." If what was done by the respondent was not a violation of the law, then it permits what the legislature never intended—a method by which a substitute for the saloon may be found, while exempt from the payment of taxes and without the regulations and restrictions which experience has shown to be necessary if intoxicating liquors are to be sold.

The exceptions are overruled, and the case is remanded for further proceedings according to law.

HOOKER, BLAIR, and STONE, JJ., concurred.

OSTRANDER, J. (*concurring*). The testimony, undisputed, discloses that on September 14, 1909, some one at respondent's request purchased for him in another village, nine pint bottles of beer. The same person purchased for himself two bottles of whisky, and, upon his return to the village of Boardman, took the liquor to respondent's sleeping room, arriving about noon. Respondent is a single man, boarding at a restaurant, and occupying rooms in the rear of his barber shop, where he sleeps and keeps his personal belongings. The beer was placed on ice, the whisky was in evidence, and in the afternoon there were gathered there a number of men who were drinking the liquor.

Under the circumstances disclosed by the testimony, the trial court was right in refusing to direct a verdict for respondent, and the conviction may be sustained. But I think it proper to say that in my opinion the rooms occupied by an unmarried man may be considered to be his home, in which, in a proper manner, he may be host to a friend or to friends. If the testimony were less conclusive in establishing the fact that this respondent, on this occa-

sion, was permitting others to use his rooms for the purpose of drinking, not only his beer, but the whisky of another, I should regard the charge as faulty in not presenting to the jury the question whether the respondent was acting in good faith and exercising a decent hospitality. Former decisions of this court, which are referred to in the opinion of Mr. Justice MOORE, recognize the distinction here pointed out.