LAYZELL *v.* J. H. SOMERS COAL CO.

MASTER AND SERVANT—COMPETENCY OF EMPLOYÉS—NEGLIGENCE—FELLOW-SERVANT—INCOMPETENT ENGINEER—MINES AND MINING.
Evidence offered to show the incompetency of an engineer employed in defendant's coal mine examined, and *held,* to require the direction of a verdict for defendant.

Error to Saginaw; Gage, J. Submitted April 11, 1911, (Docket No. 73.) Decided February 10, 1912.

Case by Charles Layzell against the J. H. Somers Coal

Company, for personal injuries. Judgment for defendant. Plaintiff brings error. Affirmed.

*F. E. Emerick* and *W. J. Nash* (*James H. Davitt*, of counsel), for appellant.

*Walter J. Lamson* (*Fred L. Vandeveer*, of counsel), for appellee.

STONE, J. This case is before this court for the second time. When here before (156 Mich. 268–277 [117 N. W. 179, 120 N. W. 996] ), the principal question discussed and considered was the construction of section 3 of Act No. 100 of the Public Acts of 1905, which provides—

" That only a competent and trustworthy engineer shall be permitted to operate the cages and hoisting devices in all coal mines of this State,"

—and a judgment entered on a directed verdict for the defendant was reversed, and a new trial ordered. The suit is brought to recover damages for personal injuries received by the plaintiff on account of the claimed negligence of the defendant. Defendant was operating a certain coal mine in St. Charles township, Saginaw county, on March 2, 1906; and had been for several years before. The injury sued for occurred on the date above stated at about 9:30 o'clock p. m. At the date named, and for some months prior thereto, the plaintiff was employed at the mine as a pumpman, and on the evening named he was required by his duties to go down into the mine. In company with his helper, named McDonald, plaintiff entered the cage at the top of the shaft, and it is claimed gave the proper signals to the man operating the levers in the engine room to be lowered into the mine. This operator, named Saunders, instead of manipulating the machinery so as to lower the cage into the mine, did exactly the opposite, and pulled the lever so as to cause the cage suddenly and violently to be elevated some thirty feet up into the tipple, whereby the occupants were dumped out, with the result that the plaintiff was seriously injured.

The basis of the plaintiff's claim is that Saunders, who made the error causing the plaintiff's injury, as stated, was not a competent and trustworthy engineer, as required by the statute above referred to, and that the plaintiff did not assume the risk resulting from defendant's violation of this statute, and that Saunders' incompetency and untrustworthiness, as an engineer, caused plaintiff's injury. The defendant denied this, and also claimed that plaintiff was guilty of contributory negligence in getting into the cage at the time, and in the manner he did, and also in riding in the cage, because he had some previous knowledge, or information, that on prior occasions Saunders had improperly operated the cage. This record shows that the evidence took a wide range upon both of the main questions involved. We have not only read with great care the record before us, but we have also carefully examined the record in the case when it was in this court before. We are impressed with the fact that the record now here contains much more evidence than did the former record, tending to show the competency and trustworthiness of Saunders as an engineer. It is worthy of note that Saunders was not examined as a witness at all upon the former trial; neither was Phillips, the superintendent of defendant. The court submitted to the jury the above questions; *i. e.*, whether or not Saunders was a competent and trustworthy engineer, and whether the plaintiff was guilty of contributory negligence. The trial resulted in a verdict for the defendant, and the plaintiff has brought the case here, assigning error mainly upon the charge of the court on the subject of contributory negligence.

The trial having resulted as it did, we will first inquire whether there was any evidence of neglect to perform the statutory duty on the part of the defendant; for, if it shall turn out that the evidence did not warrant the submitting of the case to the jury because no such neglect or omission was shown, then the case should not be reversed, the

proper result having been reached, unless other prejudicial error shall be discovered in the record.

The following evidence in the case appears to be uncontradicted. The witness Saunders testified that he was 56 years old; that he had had previous experience in engineering from the time he was 19 years old; that he had run stationary engines, hoisting engines, had hoisted coal, and that he was an engineer on a freight train and a passenger train on the Michigan Central Railroad; that he had run a locomotive six years between Detroit and Buffalo, on freight trains five years and passenger trains one year; that he also ran a fire engine in Toledo and Marion; that he worked in a stave and heading mill, and that at Toledo he had run an engine unloading ore out of vessels, where he had six levers to handle; that he started in millwork 12 miles east of Toledo and worked three years learning to be an engineer there, and was 19 years old when he started; that at St. Charles he helped the fireman, usually fired two boilers; that his work in the engine room was taking care of dynamo engines, keeping them oiled, taking care of the fan engine and suction pump, and did all that an engineer should do, and continued that work 18 months; that he frequently used the cages for lifting material and coal; that he had worked for A. T. Bliss at Lindennan 20 months, running an engine in a shingle mill; that he had papers as marine and stationary engineer when he went to work for defendant; that, while his eyesight was not very good, yet he had no trouble with the levers when he had a light, and that they always had a good light at the levers at the defendant's mine.

The witness C. F. Beecher testified, in substance, as follows:

"I reside in Ohio; am engineer in a coal mine; was formerly chief of the Somers mine at St. Charles, for six years, acted as hoisting engineer for three years. It was a part of my duties to look after the engineers and firemen of the different mines there, to see that they did their work properly. I hired and discharged them. I knew

Saunders and William Rolfe. I hired Saunders, and inquired of Rolfe as to Saunders' ability as an engineer, whether he was competent and reliable, and as to his age. I said: 'We don't want a man that drinks or lays off here. We have got to have a steady man we can depend on.' And he told me the man was reliable and everything in that respect, and said he had several years engineer's experience. So the man came down and was put to work. He told me Saunders had run a locomotive, that he was a sober and steady man. * * * He was first put to firing on the tail end. He appeared to be a competent fireman. He worked at that three or four months. Then I advanced him. I stood and watched him run the cages, and showed him around the plant and engine and pumps, and everything that a man has to know in order to operate the plant. I instructed him relative to running the cages, and watched him until I was satisfied he thoroughly understood running the cages up and down. That was before I put him on as night engineer. That is the way they all learn. They start in at the tail end and run the cages when there is no one on, and practice on them. After I advanced him, I watched how he did his work, and, so far as I could see, everything was in good order. I rode down often with him, and at such times did not discover' anything which would indicate that he was not competent to handle them. No one ever made a complaint to me that the man was not all right. I never knew or heard of his drinking liquor, and never saw him have liquor around, nor when he appeared to have been using liquor. Saunders was regular at his work, except when he was sick."

On cross-examination he testified as follows:

" I was a witness in the former trial. I now refer to Saunders as night engineer. In the other case I might have called him the head fireman. There are several things that make a man skillful and competent. He must be careful to exercise good judgment at all times and not act upon the impulse of the moment, and must realize that he is handling human lives."

John T. Phillips testified that in 1905 and 1906 he was with the defendant at St. Charles as superintendent of the mines there; that he had had experience all his life in mining in Ohio and other places; that his experience as

such superintendent would lead him to observe and know of the men working around the engines, the operating of the levers, the raising and lowering of the cages, and so forth; that his work took him constantly around the mines; that he had occasionally operated the cages in coal mines himself; that the plaintiff had said to him before his injury that he was fully satisfied with Mr. Saunders, and thought he was a safe man to let him up and down the shaft; that he did object to another person, and suggested that Saunders take his place; that the witness made the change and informed Mr. Beecher, the chief engineer; that after that change Saunders was supposed to be head fireman, or assistant or night engineer; that he would have charge of the boiler room, hoisting and lowering the men; that the men could choose to use the cages or walk up and down the stairway; that they had a good safe stairway to go up and down if they wanted to walk; that witness had sent Saunders to operate the levers, and in his judgment Saunders operated them properly; that he was there after the accident the night it occurred, and he saw no evidence of liquor about Saunders, and never knew of liquor being about the mine; that the regular engineer hoists the coal because of his ability to run the cages steadily and screen the coal; that this was the most important thing about mining, when the engineer gets to the point in the dump so he can control the cage perfectly and screen the coal.

The witness J. O. Somers testified that in 1905 and 1906 he was at St. Charles with the defendant as general superintendent; that Mr. Phillips was assistant under the witness, and Beecher was chief engineer of the three mines; that the witness had had long experience in mining and knew Saunders; that, when he first knew Saunders, he was firing on the tail end; that, when the witness came back to assume charge in December, Saunders was on the head; that at the time of the accident, Saunders was head fireman and night engineer in charge of the engine; that Saunders did that work 15 or 18 months before

the accident; that witness was frequently at the mine during that time, and frequently on the cage with Saunders handling the levers—once every night for a week.

"He was all right in handling the levers. I didn't observe anything wrong. * * * No one ever made complaint to me about Saunders. I spent all my time around these mines and mingled with the men. Never saw or heard of Saunders using liquor. After the accident, Saunders was laid off for punishment."

In the light of this record it does not appear to us that the plaintiff made out a case that warranted him in going to the jury upon the question of the incompetency and untrustworthiness of Saunders as an engineer. After he was employed, his qualifications as an engineer were carefully inquired into. He was instructed as to the workings of defendant's plant, and how to manage and operate the cages. It appears that for 18 months prior to the accident he occupied the position of night engineer at defendant's mine, where the accident happened. It will be noted that this accident occurred at night. Mining was not conducted except during the daytime. The salt pumps were kept in operation, and men went down to look after them at night. The hoisting and lowering of these men and keeping the engines and pumps in operation were all that was required. Saunders' work as such engineer was to take care of the dynamo engine, the fan engine, the suction pump, raise and lower the men, and such other work as was required during the night when mining was not being done. During this entire period not a word of complaint was made against him to any of the officers, master mechanic, superintendent, or pit boss as to his habits or character as a man or an engineer. The plaintiff does not claim that he made any complaint of the alleged incompetency or untrustworthiness of Saunders, but testified that he would rather be discharged than do so. While he was acting as engineer at this mine, Mr. Somers, the superintendent, Mr. Phillips, assistant superintendent, Mr. Beecher, master mechanic, and Mr. Jenkins,

the mine foreman, frequently rode on the cage when it was operated by Saunders, and each one of these witnesses testified, without contradiction, that there never was anything amiss with him as an engineer to their knowledge or information; and that they were never told by any one that he was otherwise than a competent and trustworthy engineer.

We are led to the conclusion that the trial court would have been warranted in directing a verdict for the defendant upon this record. That being so, the other errors complained of were without prejudice to the plaintiff; and, the trial having resulted in a verdict and judgment for the defendant, we are satisfied with the result, and find no prejudicial error in the record.

The judgment of the court below is affirmed.

MOORE, C. J., and STEERE, McALVAY, BROOKE, BLAIR, and OSTRANDER, JJ., concurred.

BIRD, J., did not sit.