106          321
e 22 SC ¹217

# Keely *versus* O'Conner.

1. The "owner" of a factory, whose duty it is under the Act of June 11, 1879 (P. L., 128), to erect a fire escape, is he who is in the actual possession and occupancy of the premises, who places the operatives in a position of danger and enjoys the benefit of their services. If a tenant is in such possession under a lease from the owner of the building, the tenant, and not the landlord, is liable under the Act.

2. Schott *v.* Harvey, 9 Out., 222, followed.

3. Under a permit from the Board of Building Inspectors to erect a "factory," A., the owner in fee of a tract of land, erected thereon a five-story mill building, the different floors of which he leased to different tenants for manufacturing purposes. The fourth floor he leased to B., who used it as a manufactory of carpet yarns, and supplied it with the machinery appropriate for that purpose. A. himself occupied the ground floor of the mill, where he operated an engine and boiler, with which he furnished heat and power throughout the building. Under the lease with B., A., by himself, his engineer and watchman, had free access to the leased premises for the purpose of oiling the journals, and of seeing that the conditions of the lease as to care and cleanliness were complied with. On receipt of a notice from the Mayor to erect a fire-escape, A. built a wooden platform from the fifth floor to a high embankment in the rear of the building, and connected the other floors therewith by a flight of steps. A fire occurred in the mill, and C., an

10 OUTERBRIDGE.—21.

operative of B., was injured. In an action by C. against A. to recover damages for failure to erect a sufficient fire-escape,

*Held,* that B. was the owner of the factory under the Act of June 11, 1879, and liable for failure to comply with its provisions. *Held,* therefore, that C. could not recover against A.

4. The fire-escape, required by the Act of June 11, 1879, must be such as would be considered safe by men of ordinary reason and prudence, due consideration being given to the structure and uses of the building and the location of the internal means of egress. The fire-escape need not, however, be the very safest that could be devised, nor need the entrance to it necessarily be located in a different part of the building from the internal stairway, and the owner of the factory will not be liable, if, having erected such a reasonably safe fire-escape, a fire cuts off access thereto.

April 10, 1884. Before Mercur, C. J., Gordon, Paxson, Trunkey, Sterrett. and Clark, JJ. Green, J., absent.

Error to the Court of Common Pleas of No. 1, of *Philadelphia county:* Of January Term, 1884, No. 191.

This was an action on the case, by Mary O'Conner against Samuel S. Keely, to recover damages for injuries sustained by the plaintiff through the alleged negligence of defendant to provide a safe external fire-escape to his mill in conformity with the Act of June 11, 1879, P. L., 128. Plea, not guilty.

The facts of the case are fully set forth in the opinion of this court.

Verdict for the plaintiff for $8,000 and judgment thereon. The defendant took this writ of error, assigning as error the answers to his points, both of which are fully recited in the said opinion.

*John G. Johnson* (with him *F. A. Sobernheimer*), for the plaintiff in error.—If the defendant is to be held liable for injuries sustained by the plaintiff, with whom he has had no contract relations, and to whom he owes no common law duty, it can only be under the Act of 1879. He cannot, however, be held under that Act, because he was not the "owner" of the factory, i. e., the occupant in actual possession, who places the operatives in a position of danger and enjoys the benefit of their service. That the tenant in possession and not the landlord is such "owner" was expressly ruled in Schott *v.* Harvey, 9 Out., 222. But even if the defendant were liable under the Act, he has in this case fulfilled its requirements. The Act simply requires a "permanent safe external fire-escape." It is highly penal, and must therefore be construed strictly. Here the landlord did provide such a fire-escape, and the plaintiff below could have escaped by its aid, had not the fire cut off access to it. The defendant is not bound to erect more than one such escape, if the Act be construed strictly,

[Keely v. O'Conner.]

and he cannot possibly anticipate in what part of a building a fire may break out. There was no obligation upon him to provide against every possible contingency by locating a fire-escape in every part of the building in which a fire might possibly break out. Such being the case, we think the court erred in its qualification to our fifth point.

*Pierce Archer* (with him *E. P. Smithers*), for the defendant in error.—Schott *v.* Harvey, 9 Out., 222, does not rule this case. That was decided, as was expressly stated by Mr. Justice PAXSON, who delivered the opinion of this court, "upon the facts of this particular case." The case at bar differs very materially from that case in this respect, that in Schott *v.* Harvey the landlord in no respect occupied any portion of the leased premises, but the tenant was in exclusive possession. In the case at bar, however, the landlord was in joint possession of the leased premises with his tenants, and in the exclusive possession of the most essential part of the factory, viz.: the engine room. He is therefore liable under the Act of 1879: Elliott *v.* Pray, 10 Allen, 378; Marshall *v.* Cohen, 44 Ga., 489; McAlpin *v.* Powell, 70 N. Y., 129; Willy *v.* Mulledy, 78 Id., 310; Fash *v.* Kavanagh, 24 How. Pr. Rep., 349; Gridley *v.* Bloomington, 68 Ill., 47; Scott *v.* Simons, 54 N. H., 426; Payne *v.* Rogers, 2 H. Bl., 349; Cook *v.* N. Y. Co., 1 Hilt., 436; Milford *v.* Holbrook, 9 Allen, 17; Wood on Nuisances, § 126; Harris *v.* James, 45 L. J. Q. B., 545; McMartin *v.* Hannay, 10 C. S. Cases (1872) 3d series, 411. Under the Act of 1879, the "owner" of the factory, in the event of a lease of the building, is the landlord and not the tenant. That this was the legislative intention is clearly shown by the supplemental Act of June 1, 1883 (P. L., 50), which provides that the fire-escapes shall be erected by the "owner" or "landlord," or that the tenant may erect it at the landlord's expense. In effect, the Act of 1883 makes "owner" and "landlord" convertible terms for all purposes within its provisions. The two Acts are in pari materia, and must be construed together. Aultman's Appeal, 2 Out., 505; Keeling's Road, 9 P. F. S., 358.

Mr. Justice CLARK delivered the opinion of the court, October 6, 1884.

In the case of Schott *v.* Harvey, 9 Out., 222, we held that the duty which is imposed by the Act of 11th June, 1879, in the erection of fire escapes to factories, attaches to the owner occupying the premises, who places the operatives in a position of danger, and enjoys the benefit of their services. Further consideration of the subject involved has satisfied us

that the construction there given is the correct one.   The case at bar presents a somewhat different state of facts, but the principles which govern it are the same.   These facts are not seriously disputed; they are set forth in the paper books before us, substantially as follows, viz. :

Samuel S. Keely was the owner in fee of the Perseverance Mill, near Manayunk, the building of which was completed in February, 1880.   The "mill," as owned by him, was a five-story stone structure, containing no machinery, saving the engine and boilers; these were located on the ground floor, were operated by Keely, and furnished heat and power throughout the building.   At the time of the fire, and for some time previously, the mill was occupied by various tenants, as follows :

The first floor by Joseph Adams, who used it as a manufactory of carpet yarns; the second and third floors by Kelly & Wilhare, who carried on therein a manufacturing business; the fourth floor by Lord & Conner, who used it, under a parol lease, as a manufactory of carpet yarn, and the fifth floor by Wilde & Brother, who conducted therein a manufacturing business.   The tenants occupying each of the several stories supplied all of the machinery appropriate for, and used in, their respective operations.

The mill was located on the main street, about fourteen feet in front of a high embankment in the rear, on which was located the Norristown Railroad and a street leading to Manayunk; the top of this embankment was slightly below the level of the fifth floor.   When the mill was first constructed, a strong wooden platform, four or five feet wide and fourteen or fifteen feet long, with hand rails on each side, was carried across from the third floor to the embankment, the design of which was, mainly, to give access to a water closet in the rear of the mill.   A similar platform was run out from the fourth floor to the embankment, with the top of which it was connected by a flight of stairs, to give ingress and egress to and from the mill, by the operatives living at Manayunk.   At a later period, after a notice from the Mayor, Keely constructed a platform from the fifth floor to the top of the embankment, and connected the third and fourth floor platforms by a flight of steps, thus affording, by the several platforms and outside stairways, an external means of escape from the third, fourth and fifth floors.   The approach to these outside platforms was at the upper end of the mill, by a passage-way leading from each floor to a rear door, alongside of the internal stairway, but separated from it by a wooden partition.

On the 12th day of December, 1882, a fire broke out in the fourth floor of the picker house, separated from the main floor

by a bridge; it ran along the waste, by the bridge, to a large pile of similar waste on the fourth floor. The plaintiff, who was in the employ of Lord & Conner, as a reeler, was unable to escape, either by the internal or external stairways, in consequence of the position of the burning waste, which cut off the approach to both. She was compelled to leap from the fourth story to the ground, and was most seriously and permanently injured.

The court declined to affirm the defendant's sixth point, which was as follows : " The ' owner ' of the building, liable under the Act, is the person having possession and control of the building in which the fire occurred. If there was a tenant who had such possession at the time of the fire, then the landlord cannot be held liable for the injury." If the rule announced in Schott *v.* Harvey, *supra,* is to be maintained, there was undoubted error in the refusal of the court to affirm this point. The injury occurred from fire on the fourth floor, of which, at the time, Lord & Conner were in the occupancy, as lessees and owners, and was received whilst she was in the employment of Lord & Conner, as an operative in the manufacture of carpet yarns. If Keely was not the owner in possession, if he had no control of the fourth floor factory, and did not place the operative in the place of danger, or enjoy the benefit of her services, the duty enjoined by the Act of 1879 did not attach to him.

The Enterprise Mill was built after the passage of the Act of 1879, and those who became the lessees and owners of the several floors therein, for use as a manufactory, in which operatives were to be employed to work, voluntarily assumed all the obligations and accepted all the liabilities imposed by the Act. If a permanent, safe, external means of escape therefrom, in case of fire had not been provided, the lessees employed their operatives and put them in a place of danger at their own peril.

It is true that Keely had control of the engine house on the ground floor, and furnished the motive power and heat throughout the building ; that he reserved the right to visit the several floors at reasonable times to oil the journals, and to see that the terms and conditions of the contract, as to care and cleanliness, were complied with, and that the watchman, in the employ of the several lessees, had access to the leased premises in the discharge of his duty, but it does not appear that Keely had any control of the factory, as such. It is true also that the floors were leased to distinct tenants, that a like duty attached to each, that in the erection of fire escapes each might consult his own interests only, and that the lessees of the lower stories might deny the privilege of access to the

others for the purpose, but this was a matter to be provided for beforehand. The tenants of the higher stories should not voluntarily place themselves in a place of such peril unless they are willing to accept the consequences. The duty imposed is several, not joint, and attaches whenever by the use of machinery and the employment of operatives the building or apartment becomes a factory.

As we said in Schott *v.* Harvey, the Act of 1879 is certainly a highly penal statute ; it imposes a duty unknown to the common law, and cannot be extended by implication to parties who do not clearly come within its terms ; the authorities which have been cited are cases involving common law liabilities, and we do not think they have application here.

The answer of the court to the defendant's fifth point is also assigned for error. The fourth point is so interwoven with the fifth that in order to a clear understanding of the fifth, we unite them in one proposition.

"4th. The duty of the owner of the building, under the Act, was to provide such external means of escape as in the judgment of ordinarily reasonable and prudent men would be safe. 5. The defendant is not to be held responsible, if he built such an escape, because the fire originated in the part of the building where it was located, and thus cut off access to it."

Affirming the fourth point, the court answers the fifth as follows :—" I qualify that in this way: that would be so if the escape were so located, with reference to the structures and uses of the building, and other modes of egress from the building, as to show that it was a reasonably safe mode of exit and escape from the building. That is, you are to take into consideration the stairs, the passages from the picker-house, and the location of the escape. I affirm that point with this qualification."

We are unable to find any positive error in this answer, as we understand it, but it is somewhat obscure in its meaning. The point was certainly entitled to an unqualified affirmance, but, if the qualification was harmless, the defendant cannot complain. The requirement of the Act is, that the provision for escape shall be a safe one, and its safety may, in some cases, depend upon its location, with reference to the structure and uses of the building. In some locations it would not be readily accessible, on account of the peculiar structure of the building ; in others, the approach to it might be impracticable and dangerous, on account of the machinery ; it was proper enough, therefore, to take into consideration the stairway and the picker-house, if these had any bearing upon the question of the safety of the escape. If, however, the internal stairway be in one end of a building, we find nothing in the Act

[Hendrick v. Thomas.]

which requires that the external means of escape shall be at the other. The means provided are not required to be the very safest which could be devised, but they must be such as in the judgment of ordinarily reasonable and prudent men are safe ; a defendant having built such an escape cannot be held responsible simply because the fire originated in that part of the building where it was located, and thus cut off access to it.

> The judgment is reversed, and a venire facias de novo awarded.