## BARFOOT *v.* WHITE STAR LINE.

1. Negligence — Landlord and Tenant — Contributory Negligence—Elevators.

   The question of plaintiff's contributory negligence in falling down an unguarded elevator shaft, at a time and place where the light was insufficient, was properly submitted to the jury, in an action against the owner of the premises based on Act No. 285, Pub. Acts 1909.

2. Same—Automatic Gates—Statutes.

   Automatic gates as prescribed by the statute are designed to prevent entrance to the shaft when the elevator is not at the particular floor where they are located and for the protection of persons desiring to use the elevator as well as of those who do not intend to do so.

3. Same—Landlord and Tenant—Ownership.

   There was evidence tending to show defendant's ownership of the premises, where it appeared that the defendant had leased the building for three years, that the lessee obtained its rights of defendant, which made all repairs, receipted for rent, furnished heat, and on one occasion wrote the lessee stating that it would provide automatic gates for and paint the elevator.

4. Same—Evidence—Letter.

   Such letter was competent to show defendant's assertion of dominion over the building,—not to determine its duty to plaintiff or as an admission of its statutory duty and obligation.

5. Same—Landlord's Duty Under Labor Law.

   The owner and lessor of a building, part of which is used for manufacturing purposes by the tenant, is liable to one injured by reason of its failure to install the automatic gates required for elevators by Act No. 285, Pub. Acts 1909, assuming that the person injured is within the class for whose benefit the requirement was enacted.

6. Same—Trial—Opening Statement—Error.

   Prejudicial error was not made out by defendant because plaintiff's attorney stated in his opening that he would prove certain alterations were made at the shaft after the injury, but further stated, upon objection of counsel for defendant,

that the testimony was not competent to show negligence, and could only be received to show who was chargeable with the duty; it further appearing that the testimony was excluded when plaintiff offered it.

7. Same—Evidence.

Nor was it error to permit plaintiff to show his injured arm to the jury.

8. Same—Opinion.

Defendant was not prejudiced by the exclusion of a question of its attorney whether plaintiff could have seen that the elevator was not there, if he had had a good, bright light; the question called merely for an expression of his belief.

Error to Wayne; Codd, J. Submitted January 15, 1912. (Docket No. 15.) Decided May 31, 1912. Rehearing denied July 22, 1912.

Case by Clarence Barfoot against the White Star Line for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*Gray & Gray*, for appellant.

*Bowen, Douglas, Eaman & Barbour*, for appellee.

Plaintiff stepped into the shaft of a freight elevator and was injured. He sued the owner of the building, basing his right to recover upon the fact that the opening to the shaft was not provided with an automatic gate or door and upon the duty to provide such a gate or door alleged to rest upon the owner by reason of the provisions of section 12 of Act No. 285 of the Public Acts of 1909. The building was not occupied by the alleged owner, but by tenants, one of which, a manufacturing concern, occupied the third floor. The plaintiff was not an employé of the owner, or of the lessee, but was the employé of a third person and was engaged in installing for the use of the lessee of the third floor an electric motor. The statute relied upon is entitled:

"An act to provide for the creation of a department of labor; to prescribe its powers and duties; to regulate the

employment of labor; to make an appropriation for the maintenance of such department, and to prescribe penalties for the violation of this act."

Section 12 of the act reads:

"It shall be the duty of the owner, agent or lessee of any manufacturing establishment where hoisting shafts or well-holes are used, to cause the same to be properly inclosed and secured. It shall be the duty of the owner, agent or lessee to provide or cause to be provided at all elevator openings in any manufacturing establishment, workshop, hotel or store, proper trap or automatic doors or automatic gates so constructed as to open and close by the action of elevators either ascending or descending. The deputy factory inspector shall inspect the cables, gearing or other apparatus of elevators in manufacturing establishments, workshops, hotels and stores at least once in each year, and more frequently if necessary, and require that the same be kept in a safe condition, and shall have power to condemn any elevator if in his opinion the same be unsafe, and stop the operation of such elevator until the same be put in a safe condition."

For a violation of or failure to comply with any of the provisions of the act a penalty of not less than $10 nor more than $100, or imprisonment for not less than 10 nor more than 90 days, or both a fine and imprisonment, may be imposed. The statute gives no private right of action for any violation of its provisions.

Plaintiff had been working in the building four or five days. His duties required him to work a portion of the time in the elevator shaft which was inclosed and upon the sides of which wires were trained. He had used the elevator, operating it himself up and down the shaft, a dozen or more times. He knew that no automatic gate or door to the shaft had been provided, that the gate was elevated by hand and pulled down by hand, and that to keep the gate from descending by its own weight employés about the place used a plug or stop.

Plaintiff described how he came to be injured as follows:

"Just as I was preparing to leave I heard that the

Edison man was there. I asked where he was. He had gone down to see the meter. So the only way I knew to get to where the meter was was to use the elevator, and I went towards the elevator shaft, so I got up there and for three or four days previous they had been carrying down white powder on the elevator. It made the elevator floor very light. At that time I suppose— It was the light coming up the elevator shaft and it made this spot a little lighter than the surrounding floor. I thought it was the floor of the elevator, because anybody working around elevators knows that they do not always stop right at the floor; they are often a foot or a foot and a half above or below. I supposed that the elevator was there and was going up to it. I had never before been around an elevator shaft where the gates were not automatic; where they would not come down of their own accord if the elevator left the floor. I stepped on what I supposed was the floor of the elevator. It was dark. It was not real dark, but it was not light. Well, that is the last I remember. * * * You have not worked around in elevators before this which were not equipped with automatic gates?

"*A.* No.

"*Q.* Was this an automatic gate?

"*A.* No, sir.

"*Q.* Had you ever— About how many times had you gone up and down that elevator shaft in that elevator?

"*A.* Why possibly a dozen times.

"*Q.* In the course of what?

"*A.* In the course of doing the wiring at the shaft.

"*Q.* Did you ever approach that elevator with the gate up when the platform was not there?

"*A.* No, sir.

"*Q.* Tell the jury what it was that as you approached the shaft that made you think the elevator was there.

"*A.* The gate being up; because I had never seen the elevator before that the gates were not down when the elevator went away.

"*Q.* What was the condition of lights around that shaft?

"*A.* Why it was quite dark. It was not dark, but it was dusk. There was not much light in there."

On cross-examination he testified that when he used the elevator he pulled out the stop or plug and pulled the gate

down, never took the elevator away from the floor when the gate was not down, and had never seen the elevator away from the floor when the gate was not down.

"*Q.* Then you knew this morning when you went over towards the shaft that the gate was not an automatic gate?

"*A.* Yes.

"*Q.* You knew if it was pulled up it would not close?

"*A.* Yes.

"*Q.* You looked to see as you went over towards the elevator whether the platform was there?

"*A.* Yes.

"*Q.* You took particular pains to see whether the platform was there?

"*A.* I looked to see whether it was even with the floor or a foot below or a foot above. It was dark.

"*Q.* It appeared as though it was there?

"*A.* Yes.   *   *   *

"*Q.* There was not light enough to let you see whether or not the elevator was there?

"*A.* No, sir; not at that time.   *   *   *

"*Q.* You remember going towards the elevator?

"*A.* Yes.

"*Q.* Was the gate up?

"*A.* Yes.

"*Q.* You took particular pains to see whether the platform was there?

"*A.* Yes.

"*Q.* Before you stepped in?

"*A.* Yes.

"*Q.* That you remember?

"*A.* Yes.

"*Q.* Was there any artificial light there at that time?

"*A.* There was one lamp somewhere near but it would not work, as I recollect it it had no globe on or had burned out.

"*Q.* It was not burning on that occasion?

"*A.* No.

"*Q.* If it had been burning you would have been assisted in ascertaining whether the elevator was there?

"*A.* It was not close to the elevator.

"*Q.* Where was it?

"*A.* In front of the elevator shaft, five or six feet to one side.

"*Q*. Was there any other lights there or if it had been burning would it have given you a view of the elevator ?

"*A*. No, sir; not as I see.  *  *  *

"*Q*. Could any light have been put there that would have given you any assistance in ascertaining whether or not the elevator was there ?

"*A*. Yes.

"*Q*. There was no such light there ?

"*A*. No, sir; there was not.

"*Q*. Of course if you had had sufficient light to see that the elevator was not there you would not have stepped in ?

"*A*. Decidedly not."

Testimony to prove that defendant was owner of the premises consisted of a written lease of the third floor of the building dated January 22, 1909, made by defendant to the Colonial Manufacturing Company which was in possession when plaintiff was injured; proof of the payment and receipt of rent accordingly; a letter dated January 4, 1909, written by defendant to the Colonial Manufacturing Company confirming oral arrangements for the lease and containing this sentence:

"The White Star Line will provide automatic gates to elevator and paint the elevator with white water paint."

The term created by the lease was three years from January 1, 1909. The same relation had existed between the parties thereto prior to January 1, 1909. The lessor agreed to heat the third floor, but electric power, elevator power, and janitor service were to be provided by the lessee. A representative of the lessee testified:

"This elevator was used by our company and it was already installed in the building when we took possession of this floor. Our landlord all of the time that we occupied the premises was the White Star Line. The White Star Line repaired the elevator. The White Star Line paid for the power. Our company never made any repairs to the elevator or the shaft. These were all made by the owner of the building. About the time of the execution of the lease we had some correspondence with the White Star Line relating to the elevator. We had been asking

to have the shaft of the elevator painted white and for an automatic gate to be installed. This was by correspondence and also orally."

At the close of plaintiff's case, defendant moved for a directed verdict, and the motion was renewed when the taking of testimony was concluded. Error is assigned upon refusals to direct a verdict as requested. Defendant preferred certain requests to charge, and, after the verdict, moved for a new trial and the motion was denied. Error is assigned upon the rulings. In this court the errors discussed in the brief for appellant are based upon the refusal of the court to direct a verdict in its favor because (1) the want of a proper light at or near the elevator was the proximate cause of the injury; (2) plaintiff was guilty of negligence contributing to his injury; (3) it was not proven that defendant was an owner, agent, or lessee within the meaning of the statute. Error is also assigned upon exceptions to rulings admitting and excluding testimony.

OSTRANDER, J. (*after stating the facts*). Contentions 1 and 2 may be considered together. An automatic gate at the entrance to an elevator shaft serves the purpose of preventing entrance into the shaft when the elevator is not at the particular floor and of permitting entrance when it is there. It is not designed and used for the single purpose of keeping people not intending to use the elevator from falling down the shaft, but for the safety as well of persons desiring to use the elevator. See *Murphy* v. *Veneer Works*, 142 Mich. 677, 680, 681 (106 N. W. 211). It is not conclusive of the question of plaintiff's negligence that he used care and, as he believed, sufficient care to ascertain that the elevator was where, within his experience, the open gate indicated it to be, although he knew the gate did not operate automatically. Assuming that the statute was enacted for his benefit and that the statute duty is imposed upon defendant, a breach of the statute duty is made out which, concurring with other circumstances, caused the plaintiff's injury. Whether,

under all the circumstances, plaintiff was careless was a question for the jury.

Plaintiff does not claim that defendant owed him any duty in the premises unless the statute duty to provide automatic gates to the elevator was imposed for his benefit. It is important to understand the scope of defendant's contention. It contends that the remedy for a violation of a statutory obligation is on the part of the public and is penal in its nature. It is said in argument that—

"In some instances individuals have been given a remedy against a person for the violation of a statutory duty, but this has been where the duty imposed by the statute or ordinance was also a common-law duty."

And further:

"It is only in special instances, and the case at bar is not one of them, that persons are permitted to recover damages because of a violation of a duty imposed upon them solely by statute. The most common illustration of such a principle is found in actions brought by a servant against his master for injuries that resulted from the failure to provide certain safety appliances required by statute. This principle would be applicable in the case at bar if the Colonial Manufacturing Company were the defendant and was sued by one of its employés for an accident such as sustained by Barfoot, but it is not applicable where the defendant is the owner of the premises and not in possession, and the plaintiff and defendant have no contract relations."

I do not understand by this language that it is claimed that if the statute imposes upon the owner of the building the duty to provide automatic gates for elevators, and if the duty is imposed for the benefit of a class of persons who may have their remedy, if injured, upon the statute, that plaintiff is not one of the class of persons entitled to the remedy. The point that he is in no event one for whose benefit a thing was enacted is not presented in the defendant's requests to charge, is not adverted to in the charge which was given, and is not debated in the brief for the appellee. Therefore I assume, for the purposes of

this opinion, that it is conceded, not disputed, that if the defendant owed a duty to provide automatic gates at the elevator opening, and for its failure there is a private remedy on the statute, plaintiff may have the remedy.

The preliminary question, namely, whether there was testimony tending to prove that defendant was owner of the building, must be answered favorably to plaintiff whether we do or do not consider the letter of January 4, 1909, admissible in evidence. I think the letter was properly admitted, not for the purpose of determining the duty of defendant to plaintiff, or as an admission that the statute duty and obligation rested upon it, but to show defendant's assertion of dominion over the building. In admitting it over an objection that it was incompetent and immaterial, I think the court committed no error, although the reason stated by the court for its admission was the one " of showing notice on the part of the defendant regarding this automatic gate." It is said in argument that the testimony tends no more to prove that defendant was owner than that it was agent of the owner, or a lessee, and that speculation respecting the precise character of defendant's dominion was, and should not have been, permitted. Defendant was charged as owner of the building, and the testimony admitted tended to prove that it was owner.

Whether the statute duty is imposed upon an owner of premises who does not occupy them but has leased them to others is a question depending for its answer upon the meaning to be given to the statute. The statute of Westminster (1 Stat. p. 213 [13th Edw. I, chap. 50]), gives a remedy by action on the case to all who are aggrieved by the neglect of any duty created by statute. In 1 Comyns's Digest, Action upon Statute (F) it is laid down that—

" In every case where a statute enacts or prohibits a thing for the benefit of a person, he shall have a remedy upon the same statute for the thing enacted for his advantage, or for the recompense of a wrong done to him contrary to the said law."

See *Couch* v. *Steel*, 3 El. & B. 402.

This familiar doctrine is amplified by Mr. Justice COOLEY in his work on Torts (1st Ed.), pp. 653, 654, in the following language and a copious reference to adjudicated cases:

"Where the statute imposes a new duty, where none existed before, and gives a specific remedy for its violation, the presumption is that this remedy was meant to be exclusive, and the party complaining of a breach is confined to it. It is upon this ground that it has been many times held that when the right to exact tolls has been conferred upon a corporation, and a summary remedy given for their collection, the corporation must find in this summary remedy its sole redress when an attempt is made to evade payment. So if performance of the duty is enjoined under penalty, the recovery of this penalty is in general the sole remedy, even when it is not made payable to the party injured. But the rule is not without its exceptions; for if a plain duty is imposed for the benefit of individuals, and the penalty is obviously inadequate to compel performance, the implication will be strong, if not conclusive, that the penalty was meant to be cumulative to such remedy as the common law gives when a duty owing to an individual is neglected. And if the duty imposed is obviously meant to be a duty to the public, and also to individuals, and the penalty is made payable to the state or to an informer, the right of an individual injured to maintain an action on the case for a breach of the duty owing to him will be unquestionable.

"There are always questions of difficulty respecting the remedy when a statute imposes a duty as a regulation of police, without in terms pointing out what shall be the rights on the one side and the liabilities on the other, if the duty is neglected. Is the duty imposed on public grounds exclusively, and if not, what persons or class of persons are within its intended protection? These are the problems which such statutes usually present."

The general doctrine has been many times approved by this court (*Syneszewski* v. *Schmidt*, 153 Mich. 438 [116 N. W. 1107]; *Layzell* v. *Coal Co.*, 156 Mich. 268 (117 N. W. 179, 120 N. W. 996]; *Murphy* v. *Veneer Works, supra; Kleinfelt* v. *Coal Co.*, 156 Mich. 473 [121 N. W.

118, 132 Am. St. Rep. 532]) and in respect to provisions
of former statutes now incorporated in the very act relied
upon by the plaintiff.   It must be held that section 12 of
the act imposes upon certain persons a duty which, but for
the statute, would not exist for the benefit, not only of the
public, but of a class of persons liable to be injured by its
violation.

As has been stated, I assume in this opinion, but do
not decide, that plaintiff is one of the class for whose ben-
efit a thing was enacted by the statute.   The question is
whether defendant, owner of the building, is the owner
referred to in section 12.   It is to be regretted that in
framing a statute which attempts to impose upon various
persons duties of such importance, and which provides so
considerable penalties for violations of the duties, more
precise language is not employed.   The identity of the
person or persons liable to be fined and imprisoned on ac-
count of the omission to do a particular thing ought not
to be left in doubt by the law imposing the penalty.   Com-
parison of the various provisions of the law, one with an-
other, affords us little aid.   There is, however, this dis-
tinct provision found in section 23, namely, that factory
inspectors shall have power to order all improvements
"herein specified" such as the repairing of elevators, the
installment of wash and dressing rooms and water-closets,
and necessary orders concerning the same shall be served
on the owner of the building or premises.   The section
concludes with the proviso:

"That whenever the owner of such buildings or prem-
ises as mentioned in this act be a nonresident of this State
said order may be made on his resident agent or the tenant
of such buildings or premises.   If the tenant be required
to make such improvements he may deduct the cost there-
of from the amount of rent for use of such buildings or
premises."

No power is given to the factory inspector to order the
construction of an elevator.   Section 12 confers upon him
power to inspect cables, gearing, or other apparatus of

elevators in manufacturing establishments, workshops, hotels, and stores at least once in each year and to require that the same be left in a safe condition, to condemn an unsafe elevator and stop its operation. The extent of the power thus conferred need not be considered. There is found in section 12, when read with section 23, support for the conclusion that the duties imposed by section 12 rest upon the owner of the building. Support for the same conclusion is found in the fact that an elevator as a structure is usually, if not always, an integral part of a building, like a passageway and a staircase. An elevator cannot be installed in a completed building without a considerable disturbance of the structure of the building itself. In a new building it is a part of the plan of the building itself—a permanent thing. I construe the statute as imposing the duty upon the owner of the building, and regard the words "manufacturing establishment" as meaning, in the particular section we are considering, premises in or on which a manufacturing business is conducted. With this construction, the words "agent" and "lessee" have a reasonable meaning.

There are statutes in other States similar in character but distinctly different in terms. In Pennsylvania two decisions (*Schott* v. *Harvey*, 105 Pa. 222 [51 Am. Rep. 201], and *Keely* v. *O'Conner*, 106 Pa. 321) involved the meaning of the act of June 11, 1879 (P. L. 128), entitled: "An act to provide for the better security of life and limb in cases of fire in hotels and other buildings." It provided that every storehouse, factory, manufactory, or workshop of any kind in which employés or operatives are usually employed at work in the third or any higher story should be provided with a permanent, safe, external means of escape therefrom in case of fire, and it was made the duty of the owners, superintendents, or managers thereof to provide such fire escape. In the first case, one of first impression, there was a suit brought upon the statute against the owner of the land and building who

was not in possession but had leased the premises to the factory owner. It was held:

"A number of authorities were cited showing the construction which has been placed upon the word 'owner' both by the legislature and the courts. But the meaning of the word depends in a great measure upon the subject-matter to which it is applied, and, as it is used in each of the instances cited in an entirely different connection, they throw scarcely a glimmering of light upon the question. The term 'owner' is undoubtedly broad enough to cover either view of the case. A tenant for years, a tenant for life, and a remainderman in fee is each an owner. So there may be a legal and an equitable estate; the trustee and the *cestui que trust* are both owners. When, therefore, the legislature used a term of such varied meaning we must presume they intended such an owner as is in the possession and occupancy of the premises, who has the immediate dominion and control over it, and the manner of whose use of it makes a fire escape necessary. Had the owner in fee been intended, it was easy to have said so. This view meets all the requirements of the act. It places the responsibility where it properly belongs, upon the person in the possession and occupancy of the property as owner for the time being, and the nature of whose business renders the erection of fire escapes necessary to protect the lives of his employés."

In the second case the same rule was applied. It is said in the brief that, following these decisions, the legislature of Pennsylvania amended the statute of 1879 so as to impose the duty in question upon the "owner or owners in fee or for life;" thus creating a certain responsibility.

In *Lee* v. *Smith*, 42 Ohio, 458 (51 Am. Rep. 839), the provision of the statute in question imposed upon "any owner or agent for owner of any factory, workshop, tenement house, * * *" the duty to provide a fire escape. The case was heard on demurrer; the court concluding that the words "owner of any factory" did not mean "owner of the building" when the owner of the building and the owner of the business carried on therein were not the same person. These cases are relied upon by defendant. In Illinois an act relative to fire escapes for build-

ings imposed a duty to provide for them upon the owner or owners, trustees, lessees, or occupant of any building not so provided, and required that all buildings of a certain height thereafter erected for certain purposes should be provided with fire escapes before their completion. The court construed the act as imposing the duty upon the owner of the building whether in or out of possession. *Landgraf* v. *Kuh*, 188 Ill. 484 (59 N. E. 501). This ruling was affirmed in *Arms* v. *Ayer*, 192 Ill. 601 (61 N. E. 851, 58 L. R. A. 277, 85 Am. St. Rep. 357). A similar statute in Missouri imposed a duty to provide fire escapes upon "the owner, proprietor, lessee, or keeper of any hotel," etc., and it was held that both the owner and lessee were liable for injuries to a lodger in a leased hotel due to a failure to construct the escapes; the initial duty being on the owner. *Yall* v. *Snow*, 201 Mo. 511 (100 S. W. 1, 10 L. R. A. [N. S.] 177, 119 Am. St. Rep. 781, 9 Am. & Eng. Ann. Cas. 1161).

In Minnesota a statute provides that all hoistways, hatchways, elevator wells, and wheel holes in factories, etc., shall be securely fenced, inclosed, etc. The duty was imposed in terms upon no one. Suit was brought by an employé of the lessee of a building against the owner of the building for damages for injuries suffered because of a violation of the statute. It was held that the duty rested, in the first instance, upon the owner of the building; some consideration apparently being given to the fact that the owner turned the building over to the lessee with the unguarded opening. *Tvedt* v. *Wheeler*, 70 Minn. 161 (72 N. W. 1062). See, also, *McLaughlin* v. *Armfield*, 58 Hun (N. Y.), 376 (12 N. Y. Supp. 164); *Welker* v. *Brewing Ass'n*, 103 Minn. 189 (114 N. W. 745). Some of these decisions, and others, are authority for the proposition that, if the statute had named no one to perform the duty and had in general terms required the elevators to have automatic gates, the initial duty in the premises would rest upon the owner of the building. The use in our statute of the words "owner" or "lessee"

may be considered as the legislative designation of persons upon whom the duty would in any event devolve; upon the owner first, upon both or either at the election of the person injured. The court was not in error in ruling that upon the owner of the building was imposed the duty to provide automatic gates for the elevator.

Counsel for plaintiff stated in the presence of the jury, in making his opening statement, that he would prove that after plaintiff was injured defendant painted the elevator shaft and provided an automatic gate. The statement was excepted to, and counsel for plaintiff stated that it would not be proper as bearing upon the question of defendant's negligence, but would be offered to prove where the legal duty rested. The testimony was not admissible. The defendant had promised to paint the elevator shaft and provide an automatic gate, but had delayed. The testimony was not received when it was offered, and, in view of the conclusions above announced, defendant was not prejudiced by the statement or by the offer of corresponding testimony.

It is complained that plaintiff showed his injured arm to the jury. Considerable discretion is lodged with the trial judge in regard to such matter, and I cannot think that it was not properly exercised in this case.

The complaint that defendant was not permitted to show that there was no light at the elevator shaft, and the general condition with respect to light, and the absence of light, is without foundation. The particular question upon which the exception is based is, "If you had had a good, bright light, you would have seen it (the elevator) was not there?" The question called for no fact, but at best for an expression of belief.

No prejudicial error is made out, and the judgment is therefore affirmed.

MOORE, C. J., and STEERE, MCALVAY, BROOKE, BLAIR, and STONE, JJ., concurred. BIRD, J., did not sit.