LYDMAN v. DE HAAS.

1. MASTER AND SERVANT — PERSONAL INJURIES — NEGLIGENCE—DE-
FECTIVE APPLIANCES.

Act No. 10, Pub. Acts 1912 (2 How. Stat. [2d Ed.] § 3939
et seq.), abolishing the fellow-servant rule deprives the
employer who has not elected to be governed by the pro-
visions of the law, of the defenses of contributory negli-
gence (unless wilful), assumption of the risk of the fel-
low-servant's negligence and assumption of the risk from
failure to provide safe premises, safe appliances, or risks
inherent in or incidental to the nature of the employ-
ment, but in order that plaintiff may recover it is neces-
sary to show that the defendant is chargeable with negli-
gence.

2. SAME—PERSONAL INJURIES—EVIDENCE OF NEGLIGENCE.

Plaintiff operated a lath machine which the evidence
tended to show frequently got out of alignment and re-
quired to be rebabbitted. On the day of the injury plain-
tiff's evidence showed the machine had been repaired
more than once. It is claimed that one of the bolts which
plaintiff passed through the machine broke by reason of
improper action of the machinery and stuck in front of
the saws. The declaration charged that because of the
improperly constructed chute below the saws broken
pieces of material lodged and it became necessary to re-
move them in order to permit the further operation of
the machine, that in so doing his hand came in contact
with the saws and was injured. The testimony showed
that the saws were properly guarded. The testimony
failed to show that the accident was due to the defective
chute; plaintiff relying upon the theory that the saws
had become out of alignment and caused the bolt to break.
There was no evidence that tended to show defective con-
dition of the saws or want of alignment as charged by
the plaintiff, whose testimony supported defendant's con-
tention that sufficient repairs had been made shortly
before the accident. Held, that the trial court should
have directed a verdict for the defendant on the ground
that there was insufficient proof of defendant's negligence.

3. SAME—PROXIMATE CAUSE—CONTRIBUTORY NEGLIGENCE.

Defendant's contention that plaintiff's contributory negligence was the proximate cause of the injury, was not sustainable under the above mentioned act, unless such negligence was the sole cause of the accident, and defendant was guilty of no failure to perform his duty. A negligent act of plaintiff, contributing to his injury, could not be considered to be an independent intervening cause.

4. SAME—INSPECTIONS — FAILURE TO STOP MACHINERY — CONTRIBUTORY NEGLIGENCE.

The court was in error in submitting to the jury the issue whether as matter of custom plaintiff was not required occasionally to reach in between the saws in order to remove pieces of bolt or lath, in the absence of evidence that he had been so instructed, and upon a record which tended to establish that he might have caused the machinery to be stopped, before removing the pieces of material.

Error to Baraga; O'Brien, J. Submitted November 4, 1914. (Docket No. 41.). Decided March 18, 1915.

Case by Oscar Lydman against Nathan Mitchell De Haas for personal injuries. Judgment for plaintiff. Defendant brings error. Reversed.

*W. S. Hill* (*C. F. Button*, of counsel), for appellant.

*A. W. Kerr*, for appellee.

STONE, J. This action was brought to recover damages for an injury to the left hand of the plaintiff, received on September 9, 1912. This was a few days after the workmen's compensation act took effect, and about a month before the defendant went out of business; the said defendant not having elected to pay compensation under the said act.

The defendant, as lessee, had been running a sawmill at Skanee, Baraga county, for about 20 years.

The plaintiff had worked for defendant for some time about six years before, and during the summer of 1912 he worked for defendant about two months altogether; first behind the slab saw, then outside at various duties, and finally back in the mill running the lath machine—"shoving lath," as it is called. This lath machine was on a bench or table approximately waist high, about 3 feet wide from front to back (the front being the plaintiff's position), and some 8 feet long from left to right. The machine consisted of two lath saws about 12 inches in diameter, hung on a horizontal shaft just below the bed of this bench, so that the saws came up through the bench some 3 or 4 inches. The bench extended to the left of the saws toward the bolter saw about 5 feet. In front of these saws there was a pair of feed rollers, one lying in the bed of the bench and the other immediately over it. These rollers were about $3\frac{1}{2}$ inches from the saws, were about $1\frac{1}{2}$ inches apart, and had jagged teeth. They turned toward the saws so that if a block of wood were shoved against them they engaged it with their teeth and carried it along and forced it against the saws. There was another pair of similar rollers behind the saws, which took the block after it had passed the saws, and a man was stationed there to receive it and the laths that had been cut from it. At the right hand of the plaintiff there was a lever which raised, simultaneously, the upper roller of each pair so as to disengage both pairs from any timber between them and permit its removal, if it projected out from the machine far enough on either side to permit the man on that side to grasp it, or, if it did not so project, to permit the insertion of another piece to dislodge it.

All of this machinery was covered in front and above so that there was no way for a man's hand to come in contact with the saws except through these

rollers. By reaching around to the left of and behind the rollers, however, the saws could be reached. Beneath the bench and the saws was a chute which conveyed the sawdust, broken pieces, chips, etc., to the burner. There was a side guide against which the bolt was pressed when it was shoved against the front rollers. One lath was cut between this guide and the nearest saw, and another lath was cut between the two saws. The saws and rollers were on the left of this guide, occupying a space of about 5 by 18 inches, while all the bearings and means of driving the saws and rollers were on the right of this guide, as the plaintiff stood at his work. All the machinery, shaftings, bearings, pulleys, saws, and rollers occupied a space approximately 2 feet square on the bench, and extended above the bench about 6 inches. The opening on the left side is this 6-inch space between the bench and the covering over the machinery above mentioned. Next to the right from this guide came the first bearing of the saw shaft, then the pulley which drove the saws, and farthest to the right was the second bearing. The belt which drove this shaft ran down through the floor to the power pulley, so that should the bearings wear away, or the babbitt melt and run out of the bearings, as the plaintiff claimed often happened, and thus gave the shaft additional space in the bearings, the tension of the belt would pull the shaft down to the bottom of that space, and the effect would be to lower the shaft and the saws. The plaintiff, on the trial, contended that the bearing next the saws frequently became thus worn; that because thereof the end of the shaft carrying the saws often was lowered; that at such times the saws ran in a plane slightly out of a true perpendicular, and made a wedge-shaped and unmerchantable lath; and that this position of the saws tended to increase the breaking of bolts, and to increase the

liability of pieces becoming lodged around the saws.

At the time of the injury plaintiff was operating this lath machine, *i. e.*, was "shoving lath." Four days before this, Goodreau, the regular lath shover, had gone away for a visit. Plaintiff, then working outside, was instructed to go into the mill and pick edgings, but refused, saying: "I don't like to pick edgings. If I am going in the mill, I will take Goodreau's place"—and this he did. The lath were manufactured from the refuse of the sawmill. The slabs and edgings that were discarded in the manufacture of lumber were cut into four-foot lengths, and such of them as were suitable for lath were taken to the bolter saw, where they were cut into bolts. The bolts vary greatly in width, being as wide as the material from which they are cut will permit. Some were wide enough to make two laths, some six or eight. These bolts, from the nature of their origin, were defective and frequently broke from no other cause than inherent weakness, such as knots, cross-grain, dry and checked hemlock, broken slabs, etc. Plaintiff was shoving these bolts into this lath machine. A man stood behind the lath machine and received the lath and remnant of bolt. If the remnant had sufficient width, he passed it back to the plaintiff, and it was fed through again. This was repeated until the bolt was used up. The bolter saw was located at the left end of the lath machine bench, about five feet distant from plaintiff's position. The man who operated this bolter saw as the bolts were cut piled them on the lath machine bench between the bolter saw and the lath saws. This brought the pile of bolts to the plaintiff's left hand. Shortly before the accident, a bolt, on its last cut when its liability to break was at the greatest, broke, and a piece of it stuck in front of the saws in some way not explained. Until this piece was removed it prevented further making of lath.

This condition existed for some little time before the accident.

The defendant claims that the theory on which the plaintiff relied at the trial was altogether different from the theory set forth in his declaration; that the theory of the declaration was, in a word, an improperly constructed chute, viz., that the accident resulted solely because the chute below the bench and lath saws was so improperly constructed that, instead of permitting the pieces of broken bolts to fall away as they ought, caused them to lodge therein; and that the condition of the babbitt and saws only increased the frequency of the breaking of the bolts; and our attention is called to the language of the declaration, as follows:

"That the plaintiff while engaged in cutting a bolt of wood into lath, a bolt of wood broke, and a piece of said bolt became lodged in the chute hereinbefore mentioned in such a manner as to prevent the further manufacture of lath until the same was removed. That, in order to remove said piece of bolt, plaintiff reached his left hand into said chute and was injured by coming in contact with the saw. * * * That the defendant owed the duty of informing the plaintiff of the increased danger of bolts breaking, and that he failed in that duty."

It is urged by defendant that these are the only allegations contained in the declaration in any way indicating the cause or manner of the accident, and that they conclusively show that, even if the saws were in such a condition or position as to increase the frequency of broken bolts, as claimed, still the accident would not have happened if the chute had been so constructed that the piece could not lodge therein; and that thus, on the theory of the declaration, the condition of the saws was not the proximate cause of the accident, and was immaterial. It is further urged that upon the trial this theory was

not supported by any testimony. While plaintiff attempted to show the insufficiency of the chute, he failed to show that this broken bolt lodged in the chute, or that he reached into the chute, but showed that the piece lodged in front of the saws, and that he reached around above the bench to the left of and behind the rollers, in an attempt to remove the broken piece, and that because of this testimony the trial court instructed the jury to pay no attention whatever to the chute, saying, "The chute has absolutely nothing to do with this case."

The defendant contends that upon the trial the plaintiff's theory was that, because of the melting out of the babbitt in the bearings, the shaft would drop down, causing the saws to run at a slant, and thus to cut a wedge-shaped lath, with a tendency to increase the breaking of the bolts and the lodging of the broken pieces in or around the saws; that this condition and these results had been frequent during the summer; that under this theory the plaintiff was compelled to rely upon the condition of the saws as the proximate cause of his injury, but it is urged that he produced no evidence that the bearings and saws were in any such condition at the time of the breaking of the bolt in question; that in fact the testimony of the plaintiff directly negatived such a condition, he having testified, on cross-examination, as follows:

"*Q.* Now, you said that the saws were hanging in such a way that they broke this bolt?

"*A.* I never said such a thing.

"*Q.* How did this bolt become broken?

"*A.* I don't know. The bolt was of the ordinary run that we were using in the mill. I was having unusual troubles in sawing lath that day. Everything was not going on as usual and all right. The lath machine was bucking; the whole machine. It wouldn't run; it was blocked up. I saw Mr. De Haas that day. I never took time to tell him it wouldn't run. I saw Mr. Beckstrom (the foreman) and told

him it wouldn't run. He was fixing it up, and it bucked again. He put in new babbitts in the boxes the same day I got hurt. Twice that day, if I ain't mistaken. I can't remember exactly. I told Mr. Beckstrom the machine was bucking. This block was 10 or 12 inches long and was partly between the rollers and up to the saw. This board, after going through the rollers and coming to the saw, broke. When it broke it was standing up in this position, kind of slanting.

"Q. How much of the slab was sticking out from the rollers towards you?

"A. You mean outside of the rollers?

"Q. Yes.

"A. About a foot.

"Q. And you took hold of that slab on that foot to pull it back?

"A. Yes, sir. There is a lever there to raise the rollers and separate them. I used that lever. It does not raise them high enough when it is sticking up in front of the rollers.     *     *     *

"Q. You mean you reached around endwise and put your hand behind the roller and the saw?

"A. Yes, sir. I got hold of the bolt, and the bolt jerked my hand onto the saw; it drawed it endwise. I put my hand around the outside of the rollers and reached the bolt, and reached the saw when the bolt pulled me there. I reached around to take hold of the bolt from the side behind the rollers in front here. That is the only way you could get it out from there. I couldn't get it between the rollers and out that way."

The plaintiff described the accident as follows on direct examination:

"Q. Now, what happened when you got hurt, Mr. Lydman?

"A. The bolt was broke off and stuck up in front of the saws there, and I couldn't get it out. I tried by shoving lath to shove it out and couldn't, and we were in a hurry because we were blocked off. We were in a hurry to catch up, and I took the hand to jerk it out of there. The piece that was stuck in there was 10 inches or a foot, and it stuck right in front of

the saw, standing this way (indicating). As soon as I took hold of it, it jerked my hand right on the saw and it was all gone. That is all I can say. The fingers that are missing were taken off as a result of that injury. * * *

"*Q*. Now state to the jury, Mr. Lydman, just how that piece of 10 or 12 inch stuff was lodged or jammed in there.

"*A*. As far as I understood, she was bound in against the saw some way in there. I don't know what it was. That is more than I can say, because I am not any machinist. It stuck up in a position this way (indicating). I took it here behind the roller, and I took it with my hand. I had mitts on and it jerked. I didn't have time to think or anything when it happened. It took this way and jerked the hand on the saw."

Besides the methods used by the plaintiff, there was evidence tending to show that there were two other methods ordinarily in use on occasions of the block becoming fast or stuck in the machine, viz.: The man behind the saws would sometimes take a piece of lath and shove it through the saws from behind to dislodge the broken bolt; and, if this method failed, then the lath shover would step down to the floor beneath, and run off the belt and stop the saws. Neither of these last two methods was used, probably because the plaintiff, as he testified, was in a hurry.

Upon the close of the plaintiff's case, and again at the close of all the testimony, the defendant moved the court to direct a verdict of no cause of action on two grounds:

(1) Because no negligence on the part of the defendant had been shown; and (2) that the negligence claimed was in no wise connected with the actual injury.

Which motions were overruled, and to which ruling the defendant excepted. The trial resulted in a verdict for the plaintiff in the sum of $1,200 damages,

and the defendant has brought the case here upon writ of error.

The third and fourth assignments of error were because the court erred in overruling the motions of the defendant, last above indicated, for instruction of verdict.

The sixth assignment of error is as follows:

"Because the court erred in charging the jury upon its own motion as follows: 'It is the claim of the plaintiff * * * that by reason of that fact (the babbitt in the bearings being partially melted away so as to cause the saws to run out of true) the bolts would occasionally catch in the saws and were held there in such a way between the saws and the rollers so that the plaintiff would occasionally be compelled to reach in between the saw or saws and the rollers in order to pull away a piece of the bolt, or a piece of lath which might be held by the saw in that way.' For the reasons that there was no claim in the plaintiff's declaration and no testimony to show that the bolts occasionally would catch, or that the bolt in question did catch in the saws and be held there in such a way between the saws and the rollers so as to occasionally compel the plaintiff to reach in between the saws and the rollers to pull same away, and because there was no claim or evidence that the plaintiff was compelled to reach into the saws."

The seventh assignment of error is as follows:

"Because the said court erred in charging the jury upon its own motion as follows: 'The plaintiff also claims that the defendant was negligent in failing to warn the plaintiff that pieces of wood or pieces of the bolt would occasionally catch in the saw and be held there so that he would be compelled to reach his hand in and pull them out.' For the reason that there was no claim in the declaration, and no proof upon the trial, that plaintiff was compelled to reach his hand in, and for the further reason that there was no allegation in the declaration of negligence in failing to warn, that pieces of wood or bolt would catch in the saw so as to compel plaintiff to reach his hand in."

Ninth assignment of error:

"Because the court erred in charging the jury upon its own motion as follows: 'I will say right here now, as a matter of law, that there was no wilful neglect on the part of the plaintiff as contemplated by that statute (the Michigan workmen's compensation statute), none whatever; so that, so far as the plaintiff's negligence is concerned, you need pay no attention to that, or argue about it, or discuss it in any way. It is not in the case. The only questions for you to decide will be the questions that I give you during the course of these instructions.' For the reason that the latter portion of the foregoing was not necessary to the earlier portion relating to wilful negligence, and in effect eliminated the defendant's claim that the plaintiff's negligence was the primary, proximate, and sole cause of his injury, and gave the jury to understand that no action of the plaintiff should be considered by them in the case as affecting any of the issues therein."

Tenth assignment of error:

"Because the court erred in charging the jury upon its own motion as follows: 'It is the claim of the plaintiff that on account of the machine getting out of line and sticks would catch in the machine so often that it became more than ordinarily often; in fact, so often that it became necessary for him, as a matter of custom, to reach his hand in there and pull them out.' For the reason that there was no claim in the declaration and no evidence on the trial that it was necessary, or that it was the custom, for the plaintiff to reach his hand into the machine to pull out sticks."

It is worthy of passing note that, the defendant not having elected to pay compensation in the manner and to the extent provided by the workmen's compensation act, the following defenses were not available to the defendant:

(a) That the employee was negligent, unless and except it should appear that such negligence was wilful; and (b) that the injury was caused by the negligence of a fellow-employee; (c) that the em-

ployee had assumed the risks inherent in, or incidental to, or arising out of, his employment, or arising from the failure of his .employer to provide and maintain safe premises and suitable appliances.

1. It should still be borne in mind, however, that there can be no recovery in this case in the absence of evidence of negligence on the part of the defendant. In order for the plaintiff to prevail, it was necessary for him to show that the defendant was guilty of the negligence complained of, on the day in question. We have examined this record with care, but in vain, to find any evidence of the negligence complained of, on the day of the plaintiff's injury. There was some general evidence of the working of the machine prior to the afternoon of the accident, but it appears that the foreman had made repairs upon the machine on one or two occasions during the day the plaintiff was injured. Especially did it appear that the machine had been rebabbitted twice that day. We think that evidence of the working of the machine or the condition on prior days was not sufficient to show evidence of the condition of the machine on the day in question, especially in view of the testimony of the plaintiff that the machine had been repaired that day. The plaintiff's own testimony indicates that he does not know what caused the bolt to break, or that the same was caused by the slanting of the saws. A jury should not be permitted to speculate upon this subject. We are constrained to hold that the plaintiff did not sustain the burden of proof required to show that the defendant was guilty of the negligence complained of, and that the court erred in not directing a verdict for the defendant, as complained of in the third and fourth assignments of error.

2. The sixth and seventh assignments of error complain because the court submitted to the jury the question whether the plaintiff was not compelled occasionally to reach in between the saws and the rollers

in order to pull away a piece of bolt or lath. We are unable to find any evidence in the case that warranted this charge. We find no evidence that the plaintiff was, by instruction or otherwise, compelled by any act or instruction of the defendant to reach into the place of danger as indicated. This machinery seems to have been properly covered and protected. There is no claim that the plaintiff did not understand that by going below the machinery could have been stopped and the broken piece or block taken out, and there was no evidence that he was instructed otherwise.

3. By the ninth assignment of error the defendant complains because the court instructed the jury in the manner indicated relative to the plaintiff's negligence, for the reason that it eliminated the defendant's claim that the plaintiff's negligence was the primary, proximate, and sole cause of his injury, and gave the jury to understand that no action of the plaintiff should be considered by them in the case as affecting any of the issues therein. It seems to be the claim of the defendant that the plaintiff's negligence was the proximate and sole cause of his injury. Of course, if the plaintiff's negligent conduct was the sole cause of his injury, this may be another way of stating that the defendant was guilty of no negligence, and that matter we have already considered. If the defendant was guilty of any negligence, it is very evident that he cannot here claim the benefit of any contributory negligence on the part of the plaintiff as a defense, by reason of the act which we have referred to; and he cannot defeat recovery by claiming that the contributory negligence of the plaintiff was the proximate cause of the injury. We have examined the numerous cases cited by defendant's counsel. It is true that in the case of *Charters* v. *Industrial Works,* 179 Mich. 1 (146 N. W. 128), some

language was used by the writer of this opinion which would seem to justify the claim of counsel. In that case, in speaking of the conduct of the plaintiff in failing to relight his lantern, and in walking where he did in the dark, we held he was guilty of contributory negligence, and we said, in speaking of such conduct:

"If this did not constitute contributory negligence, it is difficult to state what would constitute such negligence. It is not necessary to cite our own cases holding that, where there is a comparatively safe and a more dangerous way of discharging a duty, it is negligent to select the more dangerous."

There was then added the following dictum, which might well have been omitted:

"We agree with defendant's contention, also, that the extinguishment of the lantern was not the proximate cause of the plaintiff's injury. The extinguishment of the lantern was followed by another independent intervening cause which could not reasonably be anticipated, namely, plaintiff's voluntary act in walking towards the approaching car, between the weights and the track, after his lantern was extinguished. This, we think, was the proximate cause of the injury, and for this act defendant was not responsible."

Manifestly, a negligent contributory act of the plaintiff would not constitute "an independent intervening cause," as that term is usually applied in the doctrine of proximate cause, so as to deprive such act of the nature or quality of contributory negligence.

Plaintiff's counsel have also called our attention to other cases where this court has held, in suits brought for injuries to minors under the statutory age for employment at hazardous work—landlord's duty to install gates for elevators, etc.—that the defense of negligence of plaintiff was not available to de-

fendant, and assert that the unlawful employment or failure to install gates, under the statutes, barred the defense of contributory negligence. In this we think counsel are mistaken. *Beghold* v. *Auto Body Co.*, 149 Mich. 14 (112 N. W. 691, 14 L. R. A. [N. S.] 609); *Barfoot* v. *White Star Line*, 170 Mich. 349 (136 N. W. 437); *Pequignot* v. *Germain*, 176 Mich. 659 (142 N. W. 1092). In those cases, notwithstanding the statutory duty upon the defendants, the defense of contributory negligence was not taken away. The rule that, since the employers' compensation act took effect, contributory negligence of the plaintiff is not a defense, should not be frittered away in an action for damages, as in the instant case, by saying that such negligence was the proximate cause of the injury. If counsel simply mean that the sole cause of the injury was the conduct of the plaintiff, and that the defendant was guilty of no negligence, then we agree with them that the plaintiff cannot recover. We do not think that the point urged in the ninth assignment of error is well taken.

4. Under the tenth assignment of error, complaint is made because the court charged the jury that they might consider whether it became necessary for the plaintiff, as a matter of custom, to place his hand where he did when he received the injury. We do not find any evidence in the record either that it was necessary for the plaintiff to do as he did, or that there was any evidence of such custom, or that he relied upon, or claimed to know of, any such custom. We think that this portion of the charge was misleading and prejudicial.

We find no other errors in the record.

For the errors pointed out, the judgment of the circuit court is reversed, and a new trial granted.

BROOKE, C. J., and MCALVAY, KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.